# SUPREME COURT — APPELLATE DIVISION — FIRST DEPARTMENT.

## December 14, 1917.

# THE PEOPLE ex rel. JOHN H. PRICE v. SHEFFIELD FARMS-SLAWSON-DECKER COMPANY.

### (180 App. Div. 615.)

LABOR LAW — VIOLATION OF SECTION 162 BY PERMITTING EMPLOYMENT OF BOYS UNDER FOURTEEN YEARS OF AGE — INTENT.

Where it was well known to the superior officers of a milk company that it was customary for its drivers to employ boys under fourteen years of age to assist them, and no effective steps were taken to prevent such employment, which even when discovered was invariably condoned, said company may be convicted of violating section 162 of the Labor Law, which provides that no child under the age of fourteen years shall be employed or permitted to work in or in connection with such an establishment.

A violation of said section of the Labor Law, which is a police regulation intended for the protection of the public health, is not *malum in se* but *malum prohibitum*. Intent forms no part of the offense. (Per. SHEARN and SMITH, JJ.)

PAGE, J., dissented, with opinion.

APPEAL in each case by the defendant, Sheffield Farms-Slawson-Decker Company, from a judgment of the Municipal Term of the Court of Special Sessions of the City of New York, Part I, rendered against it on the 5th day of April, 1917, convicting it of a misdemeanor consisting of a violation of the Labor Law, section 162, which provides that no child under the age of fourteen years shall be employed or permitted to work in or in connection with any mercantile or other business or establishment specified in the preceding section of the law. (Consol. Laws, chap. 31 [Laws of 1909, chap. 36], § 162, as

amd. by Laws of 1911, chap. 866.   See Penal Law, § 1275, as
amd. by Laws of 1913, chap. 349.)

The two judgments appealed from were numbered 2431 and
2432, respectively.

*George W. Alger,* for the appellant.

*Robert S. Johnstone,* for the respondent.

SHEARN, J.:

The defendant maintains at 529 West Twenty-eighth street
a station from which milk is distributed to its drivers for
delivery to customers on various wagon routes.   At six-thirty
A. M., on the morning of February, 26, 1917, one Price, an
inspector connected with the State Industrial Commission,
found a thirteen-year-old boy carrying a wicker basket con-
taining several quart bottles of milk into premises 306 West
Forty-first street.   The milk belonged to the defendant, came
from defendant's establishment or station at 529 West Twenty-
eighth street, and was being delivered from one of its wagons,
driven by one Schmidt, who had been in the employment of the
defendant for several years.   Schmidt, without the actual
knowledge of the defendant, had personally employed the boy
to help him, and the boy had been working with him for six
months.   Schmidt paid the boy two dollars and fifty cents a
week out of his own wages, which were sixteen dollars a week.
Schmidt claimed when questioned by the inspector, and on the
trial, that he employed the boy to watch the wagon, it appearing
that thefts of milk bottles were frequently made from wagons
left in the street by drivers who had to go into houses to deliver
milk.   On the trial it was shown, however, that the drivers of
wagons were not charged by the company for milk that was lost
or stolen from the wagons except upon occasions when it ap-
peared that the loss was one for which the driver was clearly at
fault.   Thus the employment of the boy to help deliver milk

and watch the wagon operated to the benefit of the defendant company, for it tended to miminize the loss of milk.    The defendant had a rule which was posted in its places of business and was contained in the drivers' lists of customers, providing: " Drivers must not under any circumstances allow any person not in the employ of this company to assist them in any way or to ride on their wagon.    Any violation of this rule will be sufficient cause for dismissal."    The company knew quite well that its drivers violated this rule and claimed that in order to prevent violations thereof it employed inspectors to go out on the routes of various drivers and see whether they were obeying the rule. Not infrequently the inspectors found the rule violated, but in no case did the company ever discharge a driver for a violation of the rule.

The defendant claims that the judgment is unjustified in fact and law, on the ground that the defendant neither employed the boy nor permitted him to work in connection with its establishment.    The defendant contends that while a corporation is liable for the acts of its officers, it is not liable criminally for the acts of mere employees which acts are forbidden by the company itself and done without its knowledge or consent.

The first and underlying question is, whether this offense is *malum in se* or *malum prohibitum*.    It is distinctly held in People v. Taylor (192 N. Y. 398, 23 N. Y. Crim. 23) that a violation of a similar section of the former Labor Law (Gen. Laws, chap. 32 [Laws of 1897, chap. 415], § 70, as amd. by Laws of 1903, chap. 184), relating to factories, which was a police regulation intended for the protection of the public health, was not *malum in see,* but *malum prohibitum*.    It was further held in People v. D'Antonio (150 App. Div. 109, 111, 27 N. Y. Crim. 260), that in the case of an act *malum prohibitum* intent forms no part of the offense.    (See, also, People v. West, 106 N. Y. 293, 296, 6 N. Y. Crim. 382; People v. Werner, 174 id. 132, 133, 134; Commonwealth v. Mixer, 207 Mass. 141, 142, 143; Shevlin-Carpenter Co. v. Minnesota, 218 U. S. 57, 67-70.)

The purpose and effect of a statute such as this is to impose upon the owner or proprietor of a business the duty of seeing to it that the condition prohibited by the statute does not exist. He is bound at his peril so to do. The duty is an absolute one, and it remains with him whether he carries on the business himself or intrusts the conduct of it to others. The principle was well stated by COOLEY, C. J., in People v. Roby (52 Mich. 577) : " It will be observed that the requirement that the saloons and other places mentioned shall be closed is positive. The next section of the statute provides that any person who shall violate this, among other provisions, shall be deemed guilty of a misdemeanor, and shall be punished as therein prescribed. In terms, then, the penalties of the statute are denounced against the person whose saloon or other place for the sale of intoxicating drinks is not kept closed, and no other fact is necessary to complete the offense. * * * The section under which Roby is prosecuted makes the crime consist, not in the affirmative act of any person, but in the negative conduct of failing to keep the saloon, etc., closed. * * * Many statutes which are in the nature of police regulations, as this is, impose criminal penalties irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

After discussing numerous authorities, the learned judge continued: " But the statute requires the proprietor at his peril to keep the bar closed. The purpose in doing so is that persons shall not be there within the reach of temptation. This respondent did not keep his bar closed and he has therefore disobeyed the law. And he has not only disobeyed the law, but the evil which the law intends to guard against has resulted; that is to say, there has been, either with or without his assent,— it is immaterial which,— a sale of intoxicating liquors to a person who took advantage of the bar being open to enter it."

The statute under consideration is not of the type making the master liable for an act of his servant, where it is necessary

to show that the act was done by the servant in the course of his employment or in furtherance of his master's business. This statute casts a duty upon the owner or proprietor to prevent the unlawful condition, and the liability rests upon principles wholly distinct from those relating to master and servant. The basis of liability is the owner's failure to perform the duty of seeing to it that the prohibited condition does not exist. It is not for the affirmative act of another that he is responsible, but for his own negative conduct consisting of his failure to fulfill the obligations imposed upon him. If any owner of a factory or business could escape liability for a violation of the provisions of the Labor Law by showing that the violation was committed by an employee and without the owner's personal knowledge, the Labor Law would be so much waste paper.

But even if the liability of the defendant in this case were based upon that of the master for the consequences of an act of his servant, a clear case was made out. It is no answer to the charge to say that the driver hired the boy in the furtherance of his own purposes. The driver was conducting no independent business of his own. The only business that was being done was the defendant's business of delivering milk. When it is said that the employee must at the time complained of be acting within the scope of his employment and in the furtherance of his master's business, that does not mean that the prohibited act must have been one calculated to further the master's business. It merely means that the act must be done by the employee in the course of and while furthering his master's business. In the case at bar, as above pointed out, while the employment of the boy was primarily to serve the driver's personal ends, it was not only done in the course of and while furthering the defendant's business, but was an act calculated to benefit the defendant by minimizing its losses.

The proof shows that the defendant permitted the violation of the statute. "Permit" in such a case does not mean to consent to with knowledge; it is synonymous with suffering an act to be

done, in the sense of being negligent or indifferent in respect to the violation.    Here it is shown that this corporation knew that it was a common occurrence for its drivers to violate the statute.    Yet all that it did was to post a notice, not directed particularly against the employment of children, and to employ inspectors.    Any reasonably vigilant inspection would have shown the violation by the driver Schmidt, for he had been employing this boy regularly for six months.    Not only were no measures taken calculated to be effective to prevent a violation of the statute, but it was practically encouraged by the failure of the company to impose any fine or disciplinary measures upon drivers who were discovered in violation of the law.    The case of People v. Hudson Valley Construction Co. (217 N. Y. 172), relied upon by the defendant for its proposition that a corporation is not liable criminally for the acts of mere employees, not officers, which acts are forbidden by the company itself and which acts are done without its knowledge or consent, is not in point, that being a case of larceny by pretense, where intent was a necessary element of the crime.    It may be noted that this case is authority for the proposition that when wrongful acts of employees performed in the service of a corporation are methodical and continuous, the sanction of the corporation may be inferred.

It, therefore, appears that, whether the liability be based upon the absolute duty of the owner to prevent the employment of boys under the age in connection with the owner's business, or upon the master's responsibility for the acts of his servant in the course of his employment in the master's business, which act was suffered or permitted by the negligence or indifference of the master, the judgment of conviction was right and should be affirmed.

SMITH, J., concurred; PAGE, J., dissented.

SCOTT, J.:

The statute which defendant has been convicted of violating provides that " No child under the age of fourteen years shall

be employed or *permitted to work* in or in connection with any mercantile or other business or establishment specified in the preceding section." (Labor Law [Consol. Laws, chap. 31; Laws of 1909, chap. 36], § 162, as amd. by Laws of 1911, chap. 866.)

A reference to the preceding section shows that the work which the boy Attilio was engaged in was one of the prohibited occupations. (Labor Law, § 161, as amd. by Laws of 1915, chap. 386.)

There are two things which the statute forbids; *First,* the employment of a boy under the prescribed age, and *second,* permitting such a boy to work.

The duty cast upon the proprietor of an establishment or business referred to in section 161 of the Labor Law is, therefore, two-fold. He may not employ or consent to the employment of a boy under fourteen years of age, nor must he permit such a boy to work.

The evidence shows clearly that the boy Attilio did work in connection with the defendant's business in delivering milk, and the defense was based upon the claim that defendant did not employ him, but that defendant's driver employed him in order to lighten his own work. Assuming, though not deciding, that this constituted a defense against the charge of "employing," I think that the evidence fully justified the conviction of defendant of violating the statute in "permitting" the boy "to work."

It was clearly shown that it was well known to defendant's superior officers that it was quite customary for its drivers to employ boys to work as the Attilio boy was employed and it is equally clear that no effective steps were taken to prevent the practice, which even when discovered was invariably condoned. This was a direct encouragement to the drivers to persist in the practice, and I think justified the conviction of the defendant of having violated the statute in permitting the boy to work.

CLARKE, P. J., concurred.

PAGE, J. (dissenting):

The driver was employed by the defendant to deliver milk to its customers and he was paid by it for that service. He was not authorized by the defendant to employ any one either to assist him or to be with him on the wagon. He had no actual or implied power to hire any one on the defendant's behalf. A rule of the company, copies of which were prominently posted in the company's depot in such manner as constantly to be brought to the attention of the drivers, and also printed in their route books in red ink, provided: "Drivers must not under any circumstances allow any person not in the employ of this company to assist them in any way or to ride on their wagon." The driver Schmidt employed a boy under fourteen years of age to assist him in the work that he was employed to do, paying him from his own pocket. There is no pretense, in this case, that the defendant had any knowledge of the employment of this boy, or acquiesced therein. In fact the evidence is to the contrary. The driver started each morning from the company's depot at Twenty-eighth street and Tenth avenue, the boy joined him at Forty-first street and Tenth avenue, and assisted him for about an hour and a half. The driver, in response to questions asked by the Assistant Attorney-General, stated that the inspectors of the defendant had told him not to hire boys, but they had never found him with a boy in his wagon. Nevertheless the defendant has been convicted of violation of section 162 of the Labor Law, which provides: "No child under the age of fourteen years shall be employed or permitted to work in or in connection with any mercantile or other business or establishment specified in the preceding section." (Consol. Laws, chap. 31 [Laws of 1909, chap. 36], § 162, as amd. by Laws of 1911, chap. 866.) This conviction is to be affirmed, on the grounds that knowledge and consent on the part of the person accused is not essential, because the act is *malum prohibitum* and not *malum in se;* that although the defendant did not employ the boy, it permitted his employ-

ment, and that "permit" in such a case does not mean to consent to with knowledge; that the statute casts a burden upon the master to see that no one in his employ violates the law, and that negligence in the fulfillment of this duty renders the employer criminally liable, without regard to the question by whom or for whom the boy is employed, or whether he had knowledge thereof. I cannot assent to such a construction of the statute. The prohibition of the statute is first, no child under fourteen shall be employed, and is violated by the person who employs, or on whose behalf such boy is employed. But a person who does not employ the boy or on whose behalf he is not employed, and who has no knowledge of such employment and it is contrary to his express direction, is not liable. This distinction is strikingly illustrated in People v. Taylor (192 N. Y. 398) in which the conviction of a superintendent of a factory was reversed. A girl under sixteen years of age had been employed by a foreman without the knowledge or consent of the superintendent and contrary to his express direction. The court said, however (p. 400): "We assume that the person who owns a factory is liable for a violation of said section of the Labor Law if contrary to the provisions thereof a child is employed by such owner, either directly or through an officer, agent or employee, and wholly without regard to whether the employment is an intentional and willful violation of the statute. * * * The owner, by or for whom the child is employed in violation of the statute, is liable because such employment is prohibited. The question of intent is immaterial." In the instant case the boy was not employed by nor for the defendant. The driver had no authority, express or implied, to employ any one for the defendant. Nor did the defendant permit this boy to work. When used with discrimination "permit" and "suffer" are not synonymous. To permit is to allow with expressed consent; to suffer is to allow by not objecting. The first presupposes an affirmative act; the latter a failure to act. That this distinction was understood by the Legislature is demonstrated by the use of both words in certain sections of the Labor Law and only one in others, e. g., section 70

(as amd. by Laws of 1913, chap. 529) provides: No child under fourteen shall be "employed, permitted or suffered" to work in a factory, and no child between fourteen and sixteen shall be "employed, permitted or suffered" to work without an employment certificate. Section 131, no child under sixteen shall be " employed, permitted or suffered " to work in any mine or quarry, and no female shall be " employed, permitted or suffered " to work in any mine or quarry. Section 161 (as amd. by Laws of 1915, chap. 386), which immediately precedes the section under consideration, provides: No child under sixteen shall be " employed, permitted or suffered " to work more than the hours and at the times therein specified; while in sections 77, 93, 162 and 171 the words used are " employed or permitted." (See Laws of 1912, chap. 539; Laws of 1913, chaps. 465, 464; Laws of 1911, chap. 866, and Laws of 1913, chap. 145.) Both " permit " and " suffer," however, import knowledge. A person cannot allow, by consent, or by failure to object, a thing to be done of which he has no knowledge. As Judge BLATCHFORD said when construing a Federal penal statute: " Every definition of ' suffer ' and ' permit ' includes knowledge of what is to be done under the sufferance and permission, and intention that what is done is what is to be done." (Gregory v. United States, 17 Blatchf. 325, 331.) Therefore, as it was not shown that the defendant had any knowledge that this boy was employed by the driver, it cannot be said that it permitted the employment.

Nor was there a violation of the duty cast upon the proprietor by the statute. Liability for the performance of an act inhibited, or the failure to perform an act required, can only be predicated upon responsibility for the act done or omitted, by the person himself, or by an agent or employee in his behalf, authorized or ratified.

Certainly the master's responsibility for the servant's crimes is not more liberal than that imposed in a civil action for his torts. We have recently stated, in the latter case: " The true

rule * * * is that a corporation is liable for torts committed by its officers or agents when acting within the actual or implied scope of their employment, or by ratification may become responsible for such acts when committed in excess of their authority." (Kharas v. Collier, Inc., 171 App. Div. 388, 391.)

In People v. Hudson Valley Construction Co. (217 N. Y. 172, 179) the court said: " The court properly charged that the corporation could act only through its officers and agents, and was amenable to the law for the acts of its officers and those of its employees of which it had knowledge." The corporation in that case was held liable for larceny, by obtaining more money than was its due, by false representation, exaggerating the actual cost of the work. And the court further said: " The proof permitted the jury to find that the wrongful acts attributed to the employees and agents of the defendant were performed in its service so methodically and continuously as to indicate the sanction of the corporation." The acts were performed in the service of and for the benefit of the corporation, and so methodically and continuously done that even if the acts were unauthorized, it was shown thereby that they were ratified by the corporation, for it must have had knowledge thereof. This case is not an authority for the proposition that the corporation is liable to conviction for larceny if an employee steals for his own use and benefit, without the knowledge, acquiescence or connivance of the corporation.

The excise cases cited by Mr. Justice SHEARN (People v. D'Antonio, 150 App. Div. 109, 27 N. Y. Crim. 260; People v. Roby, 52 Mich. 577) in the last analysis rest upon the doctrine of *respondeat superior.* The excise statutes impose certain duties upon the licensee to do or refrain from doing certain acts, and those cases hold that the employer cannot escape liability for the failure to observe the statutory requirements by intrusting his business to others; for empowering them to conduct the business, or intrusting to them any detail thereof, he is responsible for their acts or failures; he having given them the power, is liable

for the manner in which they execute it, irrespective of his knowledge or prohibition, because they are acting within the actual or implied scope of their employment in the conduct of his business. In the case at bar if the driver had authority, actual or implied, to employ a person to assist him or to guard the defendant's property, and he had employed this boy, the defendant could not have escaped liability, even if employment had been without the knowledge and against the express instructions that a boy under fourteen should not be employed.

In my opinion the majority of the court have failed to consider the fact that this driver was solely employed to deliver milk, collect for milk so delivered and account to the defendant. He was not authorized to employ any one. Employment of others in the defendant's business was not within the actual or implied scope of his employment. To hold the defendant liable is unreasonably extending the rule of criminal responsibility for the acts of others. It is said that other drivers of the defendant have employed boys and when discovered by inspectors of the defendant, and reported, they were not disciplined by fine or discharge. The misdemeanor with which this defendant was charged in the information was that it did willfully violate and omit to comply with section 162 of the Labor Law, in that it did employ and permit one Antonio Attilio, who is under fourteen years of age, to work in and in connection with a mercantile establishment of which it was proprietor. It is said while it may be that the evidence failed to establish employment by the defendant, that the fact that drivers other than Schmidt had employed boys, and the defendant had not disciplined them, might lead the drivers to assume that they had the right to employ them, and thus the defendant was chargeable with having permitted them to work. But Schmidt testified that he could not tell whether other drivers hired boys. Evidently he did not predicate his right to employ this boy on any such information. In effect the defendant is being held liable, not for the employment of this boy, but for having known of other similar offenses.

But as Mr. Justice SHEARN has conclusively shown this offense being *malum prohibitum,* motive or intent is not an element of the crime. If the defendant permitted this boy to work, that is, with knowledge thereof allowed it, then it is guilty irrespective of motive or intent. Hence evidence of other similar offenses was not admissible, as tending to prove this specific misdemeanor. In .People v. Hudson Valley Construction Co. (*supra*) the court at some length justifies the reception of other similar transactions on the ground that intent was an essential element of the crime. The vice of the reception of such evidence is that a defendant may be convicted, not of the particular offenses with which he was charged, but of other offenses, to which his defense has not been presented. In effect that is the position taken by the majority of this court; the conviction is justified not because it was proved that the defendant was guilty as charged, but because in other similar transactions its conduct was such that if it had known of this particular offense, it would have condoned it, and by such condonation ratified it.

In my opinion the law against the employment of children of the prohibited age or in the prohibited occupations should be stringently enforced. But I believe the end may be accomplished by prosecution of the guilty and not by overturning well-settled rules of law to hold one not within the letter of a penal statute to liability for the act of another who.is clearly within its purview.

In my opinion the judgment should be reversed.

Judgments affirmed.