Robert T. Townsend, as Administrator, etc., of James T. Townsend, Deceased, Appellant, *v.* The Commercial Travelers Mutual Accident Association of America, Respondent.

Third Department, June 30, 1919.

Appeal — rights of plaintiff upon appeal from nonsuit — insurance — accident insurance policy construed — death of insured resulting from use of hypodermic needle possessed by him in violation of Public Health Law — ignorance of the law — intent — contract to pay for death of insured produced through violation of criminal law is against public policy.

A plaintiff upon appeal from a nonsuit is entitled to the most favorable view of the facts which the jury might have found.

In order to recover under an accident policy providing "against loss of life resulting from bodily injuries, directly and approximately the result of, and which is caused solely by, external, violent and accidental means," there must be not only external and violent means but these must be accidental. It is an abuse of the word "accidental" to hold that it contemplates an act deliberately done by the insured or at his direction constituting a crime.

Hence, a recovery may not be had under such a policy for the death of an insured caused by blood poisoning resulting from a wound in his arm from a hypodermic needle, possessed and caused to be used by him in violation of the Public Health Law.

The possession of the needle by the insured was *malum prohibitum* unless he showed himself to be within the exceptions fixed in the statute, and

the rule is well established that in the case of an act *malum prohibitum* intent forms no part of the offense.

Hence, the suggestion that the insured did not know the law and did not, therefore, intend to commit a crime is of no consequence.

An insurance policy to pay for the death of the insured produced through a violation of the criminal laws of the State would be void as against public policy.

APPEAL by the plaintiff, Robert T. Townsend, as administrator, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Albany on the 21st day of March, 1919, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Henry J. Crawford [Andrew J. Nellis* of counsel], for the appellant.

*Rosendale, Hessberg, Dugan & Haines [P. C. Dugan* of counsel], for the respondent.

WOODWARD, J.:

The plaintiff has been nonsuited, and is, of course, entitled to the most favorable view of the facts which the jury might have found. The action was brought to recover $5,000, the amount of an accident policy issued by the defendant upon the life of James T. Townsend. This policy undertook to pay the amount named upon the death of the insured " resulting from bodily injuries, directly and approximately the result of, and which is caused solely by external, violent and accidental means." The evidence furnished wholly by the plaintiff is to the effect that the insured, a commercial traveler, returned to his home in Albany on the 5th day of May, 1918; that he lived with his daughter, Katherine B. Townsend, who is about twenty-one years of age; that on the night in question, at about midnight, the insured called his daughter to his room, where he lay upon the bed with one of his arms exposed and holding a hypodermic needle in his hand; that this needle was one which had been furnished by a doctor who had treated the insured's wife for cancer some two years prior, and this needle had been used upon her; that the insured directed his daughter to insert the needle

in his arm, and that she did so; that he then went to sleep and slept until about nine o'clock the next morning; that the daughter looked at the father's arm at that time and found it black and swollen at the point where the needle was inserted, and subsequently blood poisoning ensued, resulting in the death of the insured about one week after the puncture.

Upon this state of facts appearing, and on motion of the defendant, the complaint was dismissed, apparently upon the theory that the insured, in having possession, and using, or causing to be used, this hypodermic needle, was guilty of a violation of the provisions of article 11-a of the Public Health Law, constituting a misdemeanor. (See Consol. Laws, chap. 45 [Laws of 1909, chap. 49], art. 11-a, added by Laws of 1914, chap. 363, as amd. Id. §§ 249, 249-d, added by Laws of 1914, chap. 363, as amd. by Laws of 1917, chap. 431.)* We are of the opinion that the court properly dismissed the complaint. Under the language of the policy ". against loss of life resulting from bodily injuries, directly and approximately the result of, and which is caused solely by, external, violent and accidental means," there must be not only external and violent means, but these must be accidental, and it is an abuse of the word "accidental" to hold that it contemplates an act deliberately done by the insured, or at his direction, constituting a crime. There was nothing accidental about the insured having this hypodermic needle in his possession, in violation of the provisions of section 249 of the Public·Health Law, nor in the use which he personally directed to be made of it. The fact that he did not contemplate the result reached does not alter the character of the act; the needle was unlawfully in his possession, and was unlawfully used, in violation of the laws of this State, and there were no more of the elements of an accident in the transaction than there is in any other crime. The suggestion that the insured did not know the law, and did not, therefore, intend to commit a crime, is of no consequence. The having of the needle in his possession was made a crime by law; it was forbidden except under certain

---

* Now Public Health Law, §§ 433, 443, as added by Laws of 1918, chap. 639.    See Laws of 1918, chap. 639, §§ 2-4; Public Health Law, art. 22, as added by Laws of 1918, chap. 639.— [REP.

prescribed conditions, and the statute provided that the burden of showing that the holder was within the exceptions rested upon him. (See Public Health Law, § 245, added by Laws of 1914, chap. 363, as amd. by Laws of 1917, chap. 431; Id. § 444, as added by Laws of 1918, chap. 639.) Having the needle in his possession was *malum prohibitum* unless he showed himself to be within the exceptions fixed in the statute, and the rule is well established that in the case of an act *malum pohibitum* intent forms no part of the offense. (*People ex rel. Price* v. *Sheffield Farms-S.-D. Co.*, 180 App. Div. 615, 618, and authorities there cited; *People* v. *Werner*, 174 N. Y. 132, 134, and authorities there cited.) As the United States Supreme Court has said, " innocence cannot be asserted of an action which violates existing law, and ignorance of the law will not excuse." (*Shevlin-Carpenter Co.* v. *Minnesota*, 218 U. S. 57, 68.)

While we find no case directly in point in the State of New York, it has been held in Massachusetts that a contract to insure a woman against the risk of dying under or in consequence of an illegal operation for abortion would be contrary to public policy, and could not be enforced in the courts of that Commonwealth, and a policy on the life of a woman who had consented to a criminal operation was held not to involve an insurance company in liability. (*Hatch* v. *Mutual Life Insurance Company*, 120 Mass. 550.) The same principle was recognized in *Ritter* v. *Mutual Life Insurance Company* (169 U. S. 139, 157) and authorities there cited. The court in the case last cited (p. 157) quotes an Alabama case (*Supreme Commandery, etc.,* v. *Ainsworth*, 71 Ala. 446) to the effect that " ' In all contracts of insurance, there is an implied understanding or agreement that the risks insured against are such as the thing insured, whether it is property, or health, or life, is usually subject to, and the assured cannot voluntarily and intentionally vary them,' " and that " It cannot be in the contemplation of the parties that the assured, by his own criminal act, shall deprive the contract of its material element; shall vary and enlarge the risk, and hasten the day of payment of the insurance money."

The insurance company in the instant case could not, within the law, have written a valid policy to pay for the death of

the insured produced through a violation of the criminal laws of the State; such a policy would be void as against public policy. A policy which would have been void if it had specially provided for the contingency cannot be made to cover the illegal contingency by any construction of the language to make that an accident which has in it no elements of an accident, and which constituted a deliberate act in violation of the criminal laws of the State.

The judgment appealed from should be affirmed.

Judgment unanimously affirmed, with costs.