In the Matter of the Application of SAMUEL BARKIN et al., Petitioners; DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term, Queens County, March 27, 1947.

*Manuel Tancer* for petitioners.

*Charles E. Murphy, Corporation Counsel (Harry E. O'Connell* and *Morris R. Weitzer* of counsel), for respondent.

FROESSEL, J. This is an application "for an order cancelling and discharging a certain notice of lien filed by the Department of Health of the City of New York, in the office of the Clerk of

Queens County, on the 18th day of September, 1946, against SAMUEL BARKIN, MILTON BARKIN and JESSE H. BARKIN (the appli- cants herein), covering the premises described in said notice of lien as Block 6680, Lots 6, 16; Block 6682, Lot 50; and Block 6683, Lot 1, situated in Queens County * * * ."

On April 13, 1943, the Department of Health ordered the abate- ment of a public nuisance said to constitute a danger to life and health, created by private sanitary sewers and appurte- nances in 150th Street, 72nd Drive, and 73rd Avenue, Third Ward, Queens County. The board proceeded under its general powers, and more particularly pursuant to the provisions of section 564–18.0 and related sections of the Administrative Code of the City of New York. After waiting ample time for the owners, or others affected, to abate the nuisance, the department itself corrected the conditions at a cost of $9,503.92 under the authority of section 564–20.0 of the Administrative Code. The work was commenced on January 12, 1945, and completed on May 14, 1945. A notice of lien was filed in the Queens County Clerk's Office on September 18, 1946. (Administrative Code, §§ 564–22.0–564–24.0.) The lien affected a number of parcels of real property, among which were the four vacant lots herein- before described, to which the applicants herein acquired title after the nuisance was abated but before the notice of lien was filed.

By stipulation, this application has been limited to a considera- tion of the following three " objections ":

" A. That section 564–24.0 of the Administrative Code of The City of New York and the related sections immediately preceding and following such section are unconstitutional.

" B. That such sections apply only to lots with buildings or structures thereon and do not apply to vacant land.

" C. That the Notice of Lien filed pursuant to such sections is invalid because the applicants acquired title to the premises described in the notice of motion before the notice of lien was filed but after the nuisance had been abated by the Department of Health of The City of New York, of which nuisance and abate- ment the applicants had no knowledge at the time of such acquisition."

(1) It is well settled that the police power of the State, which includes " everything essential to the public safety, health, and morals " justifies the " abatement, by summary proceedings, of whatever may be regarded as a public nuisance." (*Lawton* v. *Steele,* 152 U. S. 133, 136, affg. 119 N. Y. 226.) The Legislature **may lawfully confer on boards of health the power to enact**

sanitary ordinances having the force of law within the localities in which they act. (*Cartwright* v. *City of Cohoes,* 39 App. Div. 69, affd. 165 N. Y. 631.) Orders of the board of health are prima facie just and legal. (*Matter of Silverman* v. *Department of Health of City of N. Y.,* 252 App. Div. 678.) There is a presumption that an ordinance, within the power of the body which passed it, is reasonable and just. The burden of showing the unreasonableness is on the person asserting it. (*People ex rel. Knoblauch* v. *Warden,* 216 N. Y. 154, 162, affg. 168 App. Div. 951, affg. 89 Misc. 243. See, also, Administrative Code, § 564–2.0; *People* v. *Excelsior Savings Bank,* 277 N. Y. 699; *People* v. *Cross & Brown Co.,* 277 N. Y. 701.)

Upon reading the pertinent sections of the Administrative Code in the light of the foregoing, I see no merit in the first point urged by the applicants.

The Administrative Code, so far as applicable 'here, defines what is a nuisance; provides for punishment and liability with respect to the abatement thereof; grants power to the Board of Health to make orders with respect thereto, and to execute the same itself if not complied with; and further provides how the expenses for such execution may be collected by suit or lien. (§§ 564–15.0–564–25.0.) Section 564–26.0 provides that when the department shall have executed any order, an affidavit setting forth the expenses thereof shall be filed among its records, and " b. When it shall appear that such execution or the expenses thereof, *related to several lots or buildings belonging to different persons, such affidavit shall state what belongs to, or arose in respect to each lot of such several lots or buildings, as the department or its authorized officer may direct*; and the department may revise the correctness of such apportionment of expenses as truth and justice may require.'' (Italics mine.)

The record before me shows that all resolutions, orders, papers and data, and all preliminary acts required by the several applicable provisions of the Administrative Code were duly complied with, and that the apportionment and computation was made by the Board of Assessors of the City of New York in accordance with its usual procedure, and in a just, fair and equitable manner (*Valley Farms Co.* v. *City of Yonkers,* 193 App. Div. 433, affd. 231 N. Y. 558, affd. 261 U. S. 155). The City states that it is ready to deliver a release of the applicants' lots from the lien in question on payment of the amount computed on the basis of the area and location of said lots, aggregating $1,565.90 with interest, but without any further exactions, deposits or demands. The procedure followed is in accordance with subdivision b of

section 564–26.0 above quoted, which requires the Department of Health to state '' what belongs to, or arose in respect to each lot of such several lots or buildings * * *.''

The joint and several liability provisions of section 564–17.0 of the Administrative Code refer to the '' owner, part owner, person interested, * * * lessee, tenant, and occupant, of, or in, any place, * * * ground, * * * matter and thing '', in the singular. As I read the section, it does not render the persons enumerated and related to one parcel of ground liable, jointly and severally, with the owners and others related to any other parcel of ground. Section 564–22.0 provides '' The expenses * * * shall *respectively* be a several and joint personal charge against *each* of the owners or part owners and *each* of the lessees and occupants of the * * * *place, property, matter or thing* to which such order relates * * *.'' (Italics supplied.) A close analysis of the sections involved, with particular attention to the use of the singular and plural numbers, and of the apportionment provisions of subdivision b of section 564–26.0, clearly warrants the foregoing construction.

No claim is made that the Board of Health has not followed the provisions of the Administrative Code, nor that the apportionment is unfair and inequitable. The mere fact that the Board of Health gave to the property owners and others interested ample time to correct the claimed dangerous conditions is no basis for complaint by them.

Accordingly, I have no alternative but to hold that the sections of the Administrative Code involved in this application are valid and constitutional. As was said in *Lawton* v. *Steele* (119 N. Y. 226, 235–236, *supra*): '' The right of summary abatement of nuisances without judicial process or proceeding, was an established principle of the common law long before the adoption of our Constitution, and it has never been supposed that this common-law principle was abrogated by the provision for the protection of life, liberty and property in our state Constitution, although the exercise of the right might result in the destruction of property.''

(2) Nor is there any merit in the second point raised by the applicants, namely, that the appropriate sections of the Administrative Code apply only to lots with buildings or structures thereon, and do not apply to vacant land.

Section 564–15.0 defines nuisance as embracing: '' * * * public nuisance, as known at common law or in equity jurisprudence; whatever is dangerous to human life or detrimental to health; * * * whatever renders the air * * * unwholesome.''

Section 564–17.0 of said Code, which fixes liability with respect to nuisances, refers to " any place,   *   *   * ground,   *   *   * matter and thing in the city ", and requires the persons referred to therein "  *   *   * to keep, place and preserve the same and every part, and the sewerage, drainage and ventilation thereof in such condition, and to conduct the same in such manner that it shall not be dangerous or prejudicial to life or health, subject to the sanitary code and orders of the department."

In the next succeeding section, 564–18.0, it is provided: " Whenever any   *   *   * premises,   *   *   * matter or thing, or the sewerage, drainage or ventilation thereof, in the city   *   *   * " shall, in the opinion of the board, be dangerous, it may order the same abated.

In view of the quoted language and the general tenor of all the related provisions, it is absurd to contend that these sections were intended to be limited to improved property.

(3) The third and final contention of the applicant cannot be sustained. It is not denied that the order was duly filed in the office of the Department of Health and that all preliminary acts were complied with. Anyone dealing with real estate recognizes that improvements such as paving, sidewalking, curbing, sewering and the like are frequently ordered and made under the direction of public authority, and the assessments therefor are not levied until long after the completion of the improvement and after the costs are computed and apportionments are made. Diligent persons purchasing real estate who desire to protect themselves against these subsequent levies make inquiry regarding these matters prior to the time of purchase. Such inquiry would have readily revealed to them the fact that a private sewer had been laid and constructed, and prompted the further inquiry as to its maintenance, and the order of the Board of Health. Indeed, in the chain of title to this very property, a number of deeds referred to the pipe drain through these premises, and an examination of said title would have revealed a sewer agreement dated January 9, 1940, and recorded on April 1, 1940, in Liber 4182 of Conveyances, page 586.

In the light of the foregoing, the application is in all respects denied.