In the Matter of 300 WEST 154TH STREET REALTY Co., Appellant, *v.* DEPARTMENT OF BUILDINGS OF THE CITY OF NEW YORK, Respondent.

First Department, July 11, 1968.

*George Sassower* of counsel (*Sassower & Sassower,* attorneys), for appellant.

*Alfred Weinstein* of counsel (*Stanley Buchsbaum* and *Paul Wexler* with him on the brief; *J. Lee Rankin, Corporation Counsel,* attorney), for respondent.

STEVENS, J. P. Petitioner appeals from a judgment entered November 9, 1967, dismissing its petition.

This is an article 78 proceeding to declare unconstitutional the "Emergency Repair Program" insofar as it authorizes respondent to make repairs without the permission and consent of the landlord or lienors, and to collect the rents in payment therefor, should landlord fail to reimburse the City of New York for the same.

Petitioner is the owner of a multiple dwelling, premises 116 West 139th Street, in the Borough of Manhattan. Apartment 5E therein is occupied by a welfare tenant and her seven children. According to the affidavit of the tenant attached to the answer herein, on December 23, 1966, she discovered a stoppage in her toilet, causing overflow of liquid waste and fecal matter. She telephoned the office of the landlord, notified the landlord of the condition and requested its repair. On December 27, 1966 tenant states she telephoned the agent or one of the officials of petitioner

concerning the condition and was informed that it would not be repaired by petitioner. A visit to the official's office at 5:00 P.M. on that date also proved unsuccessful. Tenant states she was threatened with eviction if she complained to the authorities. On December 27, 1966 an employee of the Department of Welfare advised the tenant to notify the Department of Buildings. This was done. On the evening of December 27 an inspection of the apartment was made and the condition corrected on December 28, 1966. Incidentally, the answer of respondent alleges that on December 27, 1966 one of its employees notified petitioner of the complaint. Petitioner was billed later for $58.10, the cost of the repairs. Accompanying the bill was a form letter which would be sent to the tenants of the premises if the bill was not paid, advising the tenants to pay their rents to the city. Petitioner paid the charges and the form letter was never sent.

Subsequently, petitioner commenced this article 78 proceeding to declare unconstitutional the Emergency Repair Program, or to declare it unconstitutional as applied to petitioner. Petitioner asserts that its first knowledge of the stoppage and repair work done came on March 2, 1967, when it received the bill and notice from respondent. Petitioner alleges the condition was the fault of the tenant and its correction the tenant's responsibility, and that the charge is excessive.

In its brief petitioner asserts (1) the Emergency Repair Program (Program) violates constitutional due process and/or is constitutionally invalid as applied; (2) the Program violates constitutional guarantees of equal protection and/or is unconstitutional as applied; (3) Special Term should have permitted petitioner to prove discriminatory enforcement; and (4) notice to petitioner is "immaterial" and was not constitutionally given.

The basic issue is whether petitioner's constitutional rights were violated by the procedures adopted in correcting the hazardous condition. Petitioner complains that it had no opportunity to contest the necessity for the work or to question the cost for which reimbursement is demanded.

Pursuant to chapter 22 of the Administrative Code of the City of New York, the resolution of the Board of Health dated January 29, 1965, and a later executive order of the Mayor, respondent was designated by the Department of Health to cause the repair of conditions constituting an immediate danger to the life or health of occupants of dwellings. Such conditions constitute a nuisance (Administrative Code, § 564–15.0) which may be abated by the Department of Health or any agency of the City of New York designated by it as its agent (Administrative Code, ch. 22, § 556–10.0 et seq.). "[O]rders of the board of health are

to be treated as prima facie just and legal '' (*Matter of Silverman* v. *Department of Health of City of N. Y.*, 252 App. Div. 678, 682), and the board could properly designate or approve the designation of respondent as an agency to abate the nuisance.

While the record permits the conclusion that petitioner, despite its denials, did in fact receive prior notice of the condition, our determination does not rest upon such a finding. "The right of summary abatement of nuisances without judicial process or proceeding, was an established principle of the common law long before the adoption of our Constitution, and it has never been supposed that this common-law principle was abrogated by the provision for the protection of life, liberty and property in our state Constitution, although the exercise of the right might result in the destruction of property" (*Lawton* v. *Steele*, 119 N. Y. 226, 235–236, affd. 152 U. S. 133; see, also, Administrative Code, §§ 556–10.0, 556–11.0). In this case there was no destruction of property but its preservation and even its improvement. The condition which was abated had existed for four or five days and clearly constituted a health hazard not only to the immediate occupants of the subject apartment but to others as well (see Administrative Code, § 564–15.0). Its correction cannot be regarded as the imposition of punishment upon the owner, or as the forfeiture of the owner's right of property in the nature of punishment. The burden of showing unreasonableness or unconstitutionality is upon the party attacking the procedure and that burden has not been met by petitioner.

The police power of the sovereign includes matters essential to public health or safety. The charges leveled here represent a joint and several charge against the owners, lessees, or occupants of the apartment and the expenses are or may be a lien against rent (Administrative Code, § 564–22.0) or, upon proper finding, a lien upon land or buildings (§ 564–24.0). Such a provision has been held constitutional (*Matter of Barkin* [*Dept. of Health, City of N. Y.*], 189 Misc. 358).

The Department of Health may sue anyone liable and recover the expenses incurred. The parties made responsible shall be liable to contribute or to make payment as between themselves in respect of such expenses, etc. (Administrative Code, §§ 564–23.0, 564–17.0). It is neither unreasonable nor discriminatory that reimbursement is sought first from the owner. He may contest the validity of the claim by refusal to pay and may sue to recover if rents are collected or paid to the city in response to the notice (§ 564–31.0). The procedure used does not constitute invidious treatment or intentional discrimination, for petitioner at most has shown nonenforcement as to the tenants (cf. *Matter*

*of DiMaggio* v. *Brown,* 19 N Y 2d 283). Mere selectivity in enforcement, if founded upon a rational basis, is not arbitrary and discriminatory. The initial obligation to keep water closets, toilets and sinks in good repair rests upon the owner of a multiple dwelling (Multiple Dwelling Law, § 77) and any liability of the tenant for a violation must depend upon a determination that such violation "is caused by his willful act, assistance or negligence" or that of a member of his household or his guest (Multiple Dwelling Law, § 78). As noted, "landlords of welfare recipients, secure in their receipt of rents directly from public funds, have even less incentive than other landlords to make repairs. Under circumstances such as these, if the Legislature chooses to select one class of landlords and impose a special sanction against them, the equal protection clause does not forbid it" (*Matter of Farrell* v. *Drew,* 19 N Y 2d 486, 492). The end sought by the applicable sections of the code is legitimate and the measures taken reasonable and appropriate to such end. The sections of the code attacked are constitutional, and the procedures should not be stricken as unconstitutional (cf. *Matter of Farrell* v. *Drew, supra*).

The judgment appealed from should be affirmed, without costs to either party.

STEUER, J. (dissenting). In this article 78 proceeding petitioner challenges the constitutionality of what is called the "Emergency Repair Program." The latter is not a statute or a legislative enactment of any kind but is merely the announced procedure of the Department of Buildings to implement a resolution of the Board of Health. The powers of the Board of Health are set forth in the Administrative Code of the City of New York (ch. 22). Among these are certain broad powers to abate nuisances. In connection therewith the board is empowered to authorize any city department to act as its agent in the execution of its power to abate such nuisances (Administrative Code, § 564–20.0). Pursuant to that power the board has directed the Department of Health to take all necessary steps to abate nuisances in regard to certain dwellings. The Department of Health in turn, when a condition comes to its attention that it deems to be an emergency, calls upon the Department of Buildings to abate the nuisance. It is upon the receipt of such a notice that the latter department has instituted the procedure that is called the "Emergency Repair Program." The steps of the "program" are as follows: Having received notice of the existence of the nuisance from the Department of Health, the Department of Buildings forthwith rectifies the condition through the medium of a contractor hired by it. It then sends a letter to the owner

of the building informing him of the repair and the cost and directing the owner to pay. Enclosed in the letter is a notice to the tenants of the building to pay their rent to the department rather than to the landlord, and the owner is informed that unless payment is made or provided for, the letter to the tenants will be mailed out.

Petitioner owns a building at 300 West 154th Street. A tenant in the building notified the Department of Health that the toilet in her apartment was stopped up. The department's inspector verified this and notified the Department of Buildings, which had a plumber correct the condition. The department then sent the communications above described demanding payment of $58.10. Petitioner insists that the repair described could not have exceeded $25 in cost.

At the outset a preliminary question is eliminated. What is challenged here is in reality unauthorized conduct by a city department. The ''Emergency Repair Program'' is neither a statute nor a departmental regulation given the force of law pursuant to a statute. It is merely the procedure adopted by a city department. However, both the petitioner and the Corporation Counsel representing the department have treated it as a regulation having the force of law, and no question of the propriety of the proceeding is raised.

The powers of the Board of Health in regard to the abatement of nuisances specified in chapter 22 of the Administrative Code are as follows: Whenever any building or the sewerage or ventilation thereof, in the opinion of the board, in any particular is in a condition dangerous to life or health, the board shall file among its records what it deems to be sufficient proof to declare the condition or situation a public nuisance and order it to be removed or corrected as the order shall specify (§ 564–18.0). Service of such an order, if it relates to a building, can be made on the owner or agent (§ 564–14.0). If the order is not complied with in five days, or in cases of imminent peril within a shorter period designated in the order, the board may execute the order or may authorize any agency of the city to execute (§ 564–20.0). The expenses of execution are a lien on the premises and on the rents (§ 564–22.0), but only on its being filed in the same manner as a mechanic's lien (§ 564–24.0), and becomes incontestable if no proceeding for its discharge is made within six months (§ 564–25.0). Aside from the lien the department may sue for the expenses (§ 564–23.0). The department may serve a copy of the order showing the expenses incurred on a tenant and require the tenant to pay the same to the department (§ 564–27.0). The owner may sue to recover any such

monies collected within 12 days after notice to him of the collection (§ 564–31.0).

On January 29, 1965, the board passed a resolution in which it declared that it had in its files records of buildings which contain specific defects or ''(f) contain other conditions which, in the opinion of the Department of Health, present an immediate danger to the life and health of the occupants thereof or the occupants of adjacent buildings'' and declared such buildings to be nuisances. The resolution further declared that service of the notices above specified would result in peril and delay, and the owners were ordered to correct the conditions. Obviously the method of enforcing the orders is the program under attack.

Though many features of this program are said to be objectionable, we concentrate on the question of notice. It must be obvious that in the procedure provided and enforced, action is taken without the slightest indication to the owner that any nuisance exists on his property, and that his liability rests on the finding of a department inspector which he can contest neither for fault, for existence, nor for extent. It is quite true that a condition inimical to public health may require immediate correction, and this quite regardless of the identity of the one at fault; and the public authorities should be empowered to act with the expedition necessitated by the condition. But payment requires no such precipitant action. Here all that is needed to invoke liability and to permit an invidious method of collection is a finding by an inspector. In *Matter of Farrell* v. *Drew* (19 N Y 2d 486), abatement of rent for failure to repair was upheld, but only on the theory that notice and an opportunity to be heard were implicit in the statute (pp. 492–493), and the manner in which the questions could be raised was pointed out (p. 493). Here the contrary is established. The Administrative Code provisions for notice are specifically obviated in the resolution. The procedure by way of lien provided for in the code, which might have provided a forum to contest some aspects of the charge, is bypassed. True, the landlord may still permit the department to notify the tenants and collect the rent from them and then sue for the amount recovered. But this devious and humiliating procedure provides less than adequate relief. In addition to its being cumbersome and embarrassing, it is in some respects so impractical that it fails to reach the status of due process. Even assuming that the statutory permission to sue allows the question of reasonable value of the repair to be raised, it will in many instances provide a method of recoupment more costly than the amounts involved, and subject the owner to admit at

least temporarily to his tenants that he has been at fault; and it was very likely so designed.

It is not enough that the procedure seeks a legitimate end. The measures taken must be reasonable and appropriate (*Matter of Department of Bldgs. of City of N. Y.* [*Philco Realty Corp.*], 14 N Y 2d 291, 297). This would include due process. It is hard to reconcile due process with a taking without notice or practical opportunity to test liability before payment. Property, even substandard housing, may still not be taken without due process — or at least we so understood.

The judgment should be reversed and the petition reinstated.

CAPOZZOLI and MCNALLY, JJ., concur with STEVENS, J. P.; STEUER, J., dissents in opinion, in which EAGER, J., concurs.

Judgment affirmed, without costs or disbursements to either party.