Fuchsberg, J.
In this declaratory judgment action, the question before us is whether the city may impose a "special assessment” charge against plaintiff’s property in order to recoup costs it incurred in removing debris from the land, and, if so, whether plaintiff had adequate notice of the charges to be imposed.
Plaintiff’s predecessor in ownership permitted an exceedingly hazardous buildup of inflammable materials near the building on his land, which resulted in a serious fire. After the building department determined that, as a result of the fire, the structure was unsound and in imminent danger of collapse, it prepared a "notice of violation” ordering that the situation be remedied immediately. That notice was timely and correctly served on plaintiff’s predecessor, who ignored it.
The building commissioner then had the land cleared and certified the cost of this clearance to the city council. That body, acting pursuant to local law, ordered the City Commissioner of Assessment and Taxation to prepare a proper assessment roll and to charge the costs against the property. When the roll was prepared, notice was published in the designated local newspaper that a hearing in the matter would be held on December 11, 1963 to determine whether the city council should confirm the assessment roll. Although plaintiff’s predecessor in ownership filed written objections to the assessment’s confirmation, no one appeared at the hearing, because, between the giving of the notice and the date of the hearing, the property had been sold to plaintiff, who states that he was unaware of the whole affair.
Plaintiff now argues that the assessment of the charges against the property amounts to a private law passed to levy a tax upon his land and that, as such, it is unconstitutional. His position is that he received no notice and that as a matter of due process, therefore, the assessment cannot bind him. Special Term granted summary judgment to the city without passing on the constitutional challenge. The Appellate Division modified to declare the ordinance valid and constitutional and otherwise affirmed the judgment. We agree with that disposition.
The assessment before us was not a tax levy but was enacted pursuant to the police power of the. State, delegated, *348 under our State Constitution, to local governments. Such bodies may enact laws for the "protection, order, conduct, safety, health and well-being of persons or property therein.” (NY Const, art IX, §2, subd [c], par [ii], cl [10].) Acting in accordance with that authority, the Legislature has enacted enabling laws which empower every city "[t]o adopt a local law or ordinance compelling the repair or removal of any building or structure that, from any cause, endangers the health, safety or welfare of the public”. (General City Law, § 20, subd 35.) These laws further provide (par g) "[f]or the assessment of all costs and expenses incurred by the city in connection with the proceedings to repair or remove such building or structure, including the Cost of actually removing the same, against the land on which such building or structure is located.”
Pursuant to the enabling legislation, the city enacted its building code, which declares all "unsafe buildings” such as "[t]hose which have been damaged by fire * * * so as to have become dangerous to life, safety, morals or the general health and welfare of the occupant or of the people of the City of Mount Vernon” (Mount Vernon City Building Code, § 21.01, subd [d]) to be "public nuisances” (§ 21.03) and authorizes the commissioner of buildings to make repairs himself if violations are not corrected within a reasonable period not exceeding 30 days (§ 21.04, subds [d], [h]). If the commissioner has to make the repairs himself, he "shall cause the costs of such repair, vacation or demolition to be charged against the land on which the building or structure existed, as a municipal lien, or cause such costs to be added to the tax roll as an assessment or to be levied as a special tax against the land upon which the building or structure stands or did stand, or to be recovered in a suit at law against the owner” (§ 21.04, subd M).
Plaintiff contends that the language of the constitutional delegation of the police power should not be read to permit either the enabling legislation or the local ordinances under it.* But that delegation of the police power is very broad; it includes "everything essential to the public safety, health, and morals” (Lawton v Steele, 152 US 133, 136, affg 119 NY 226; see, also, Matter of Barkin, [Dept. of Health of City of N. Y], *349 189 Misc 358 [Froessel, J.]; 6 McQuillin, Municipal Corporations, § 24.71).
The power of the Legislature to enlarge the category of public nuisances is not limited to those known at common law (Lawton v Steele, 119 NY, at p 233 supra). Moreover, it has long been recognized that when a local government, in the proper exercise of its delegated powers, summarily abates a public nuisance, it may compel the owner of the property involved to bear the cost of abatement. (Gregory v City of New York, 40 NY 273; City of Buffalo v Dankner, 48 AD2d 572, app dsmd 38 NY2d 826; 6 McQuillin, Municipal Corporations, § 24.79; 16 Opns St Comp, 1960, p 72; 63 CJS, Municipal Corporations, § 1072.)
The particular exercise of the police power in issue here is for this purpose identical with that challenged in Matter of 300 West 154th St. Realty Co. v Department of Bldgs. of City of N. Y. (30 AD2d 351, mod on other grounds 26 NY2d 538). That case involved the New York City "Emergency Repair Program” for multiple dwellings, under which the cost of such repairs was charged back against the property, either as a lien on rents or "upon proper finding, a lien upon land or buildings” (30 AD2d, at p 354, citing Matter of Barkin [Dept. of Health of City of N. Y.], 189 Misc 358.) Thus the exercise of the police power in issue is not only statutorily authorized but is consonant as well with common-law principles and is constitutional.
We turn, therefore, to plaintiff’s due process claim, which is based on the fact that he bought the property only after it had been cleared of the debris which constituted the violation and was not personally served by the city with notice of the hearing at which the assessment was to be enacted against the property.
It was unnecessary for the city to serve the plaintiff. At the time when service was appropriate, the city did serve the owner of record (see 14 McQuillin, Municipal Corporations, § 38.100). Although due process requires personal service upon owners who are known or who can be readily ascertained (Robinson v Hanrahan, 409 US 38, 40; Schroeder v City of New York, 371 US 208, 212-213), the city was entitled to rely on publication, a form of substituted service, to bind those parties who were not, at that time, discoverable with a reasonable amount of effort. (See 14 McQuillin, Municipal Corporations, § 38.104; Robinson v Hanrahan, supra, p 40; Walker v *350 Hutchinson City, 352 US 112, 116; cf. Botens v Aronauer, 32 NY2d 243, 249, app dsmd 414 US 1059; Smith v City of New York, 30 AD2d 122, 126, affd 24 NY2d 782.) Indeed, here, no amount of effort would have turned up the plaintiff, for, at the time of such publication he had no known interest in the property or the dispute. That service, though insufficient to constitute a foundation for a personal judgment against the plaintiff or any other subsequent owner, nevertheless was adequate to subject the property itself to a binding lien, no matter into whose ownership it subsequently came.
Moreover, plaintiff is chargeable with constructive notice of this proceeding. The records of the violations which culminated in the assessment are available for examination at the department of buildings and are public records. They state expressly that failure to remedy the violations will subject an owner to the penalties outlined in the building code, which, in turn, outlines the assessment procedure followed here. Though the appearance of the debris-free property and the record of the violation did not by themselves indicate how the violation had been cleared or that there was an outstanding charge for its clearance, an examination of the record would have sufficed at least to put one on inquiry. It has long been settled that "[djiligent persons purchasing real estate who desire to protect themselves against these subsequent levies make inquiry regarding these matters prior to the time of purchase.” (Matter of Barkin, [Dept. of Health of City of N. Y.], 189 Misc 358, 362, supra ; see, also, Botens v Aronauer, 32 NY2d 243, 249 supra.)
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed, with costs.

 Plaintiff does not, however, urge that the ordinance pursuant to which the assessment was enacted is vague or overbroad. (Cf. Mitchell v Village of Larchmont, Sup Ct, Westchester County, Oct. 28,1975, Sullivan J.)