Matter of Town of Irondequoit v County of Monroe (2019 NY Slip Op 06235)





Matter of Town of Irondequoit v County of Monroe


2019 NY Slip Op 06235


Decided on August 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, NEMOYER, AND TROUTMAN, JJ.


127 CA 18-01448

[*1]IN THE MATTER OF TOWN OF IRONDEQUOIT AND TOWN OF BRIGHTON, PETITIONERS-PLAINTIFFS-RESPONDENTS,
v
COUNTY OF MONROE, TIMOTHY P. MURPHY, AS DIRECTOR OF REAL PROPERTY TAX SERVICE FOR COUNTY OF MONROE, AND ROBERT FRANKLIN, DIRECTOR OF FINANCE AND CHIEF FINANCIAL OFFICER OF COUNTY OF MONROE, RESPONDENTS-DEFENDANTS-APPELLANTS. 






MICHAEL E. DAVIS, COUNTY ATTORNEY, ROCHESTER (MATTHEW D. BROWN OF COUNSEL), FOR RESPONDENTS-DEFENDANTS-APPELLANTS. 
HARTER SECREST & EMERY LLP, ROCHESTER (EDWARD F. PREMO, II, OF COUNSEL), FOR PETITIONER-PLAINTIFF-RESPONDENT TOWN OF IRONDEQUOIT. 
GORDON & SCHAAL, LLP, ROCHESTER (KENNETH W. GORDON OF COUNSEL), FOR PETITIONER-PLAINTIFF-RESPONDENT TOWN OF BRIGHTON. 
SARAH B. BRANCATELLA, ASSOCIATE COUNSEL, ALBANY, FOR STATE OF NEW YORK ASSOCIATION OF TOWNS, AMICUS CURIAE.


 Appeal from a judgment (denominated order and judgment) of the Supreme Court, Monroe County (J. Scott Odorisi, J.), entered November 9, 2017 in a CPLR article 78 proceeding and a declaratory judgment action. The judgment denied the motion of respondents-defendants to dismiss the petition-complaint and granted the petition-complaint. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law without costs, the motion is granted, and the petition-complaint is dismissed.
Memorandum: Respondents-defendants (County respondents) appeal in this hybrid CPLR article 78 proceeding and declaratory judgment action from a judgment that, inter alia, granted the petition-complaint of petitioners-plaintiffs (Town petitioners), denied the County respondents' motion to dismiss the petition-complaint, compelled the County respondents to guarantee and credit the maintenance, repair, and demolition charges assessed by the Town petitioners on certain properties located within their boundaries (maintenance charges), and declared that the County respondents are legally obligated to guarantee and credit those charges. We reverse.
As a preliminary matter, we note that this is properly only a CPLR article 78 proceeding inasmuch as the relief sought by the Town petitioners is available under CPLR article 78 without the necessity of a declaration (see generally CPLR 7801; Matter of Level 3 Communications, LLC v Chautauqua County, 148 AD3d 1702, 1703 [4th Dept 2017], lv denied 30 NY3d 913 [2018]).
We further conclude that the County respondents failed to preserve their constitutional challenge to the local laws of the Town petitioners inasmuch as they failed to raise that challenge in Supreme Court (see Matter of Town of Rye v New York State Bd. of Real Prop. Servs., 10 NY3d 793, 795 [2008]). We agree with the County respondents, however, that RPTL 936 does not require them to credit the Town petitioners for the amount of the unpaid maintenance charges [*2]or to guarantee those amounts.
With respect to the maintenance charges, Town Law § 64 (5-a) provides that a town may "require the owners of land to cut, trim or remove from the land owned by them brush, grass, rubbish, or weeds, or to spray poisonous shrubs or weeds on such land." If a landowner fails to comply, the town may perform such work and place a "lien and charge" on the real property for the "total expense" incurred by the town for that work (id.). Pursuant to Town Law § 130 (16), towns are also permitted to "[p]rovid[e] for the removal or repair of buildings in business, industrial and residential sections that, from any cause, may now be or shall hereafter become dangerous or unsafe" and to assess the cost of such service against the land on which the building is situated (see § 130 [16] [g]).
Section 936 (1) of the RPTL provides that the county guarantees the town's "taxes" by crediting the town "with the amount of . . . unpaid delinquent taxes." The question raised on this appeal is whether the maintenance charges are "taxes" for the purposes of RPTL 936 and thus whether the County respondents must credit the Town petitioners for the amount of any such charge that goes unpaid or is delinquent.
The maintenance charges are assessed against individual properties for their benefit and thus do not fall within the general definition of "tax," which instead contemplates " public burdens imposed generally for governmental purposes benefitting the entire community' " (Matter of Piccolo v New York State Tax Appeals Trib., 108 AD3d 107, 112 [3d Dept 2013]; see Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 58 [1978]; see generally RPTL 102 [20]). Nor do those charges constitute "special ad valorem levies" as defined by RPTL 102 (14). A " [s]pecial ad valorem levy' " is "a charge imposed upon benefitted real property in the same manner and at the same time as taxes for municipal purposes to defray the cost, including operation and maintenance, of a special district improvement or service" (id.). Although the definition of "tax" does, in certain enumerated circumstances, include "special ad valorem levies" (RPTL 102 [20]), the maintenance charges are not special ad valorem levies because they are not used to defray the cost of a "special district improvement or service" (RPTL 102 [14]). Maintenance charges also are not assessed "ad valorem" because the amount of the charge is not based on property value but is instead based on the actual expense to the town. Moreover, assuming, arguendo, that the charges are "special assessments" as defined by RPTL 102 (15), we note that the definition of "tax" specifically excludes "special assessments" (RPTL 102 [20]).
We further agree with the County respondents that section 10 of the Monroe County Tax Act does not expand the County respondents' obligations under RPTL 936, i.e., it does not require them to guarantee or credit the maintenance charges. Additionally, although Municipal Home Rule Law § 10 (1) permits towns to collect the maintenance charges, we disagree with the Town petitioners that the Municipal Home Rule Law renders those charges "taxes" under RPTL 936. Similarly, although Irondequoit Town Code §§ 94-9 and 104-14 provide that the maintenance charges shall be "collected in the same manner" as other town charges and special ad valorem levies, that describes the procedure for collecting the charges and does not address whether they must be guaranteed pursuant to RPTL 936.
All concur except Nemoyer, and Troutman, JJ., who dissent in part and vote to modify in accordance with the following memorandum: We respectfully dissent in part. We agree with the majority that this is properly only a CPLR article 78 proceeding. Unlike the majority, however, we conclude that, when a town exercises its statutory authority to assess maintenance, repair, and demolition charges against real property (see Town Law §§ 64 [5-a]; 130 [16]), such charges must be guaranteed by the county "in the same manner" as property taxes and special ad valorem levies (§ 64 [5-a]; see generally RPTL 936). Therefore, we would modify the judgment by dismissing the petition-complaint insofar as it seeks declaratory relief and by vacating the declaration, and we would otherwise affirm.
A brief overview of New York State's property tax collection scheme is necessary to understand the issue. Under that scheme, the county guarantees the town's property taxes and credits the town with the amount of any "unpaid delinquent taxes" (RPTL 936 [1]). In turn, the county retains the sole power to commence tax foreclosure proceedings against real property "which remain[s] subject to delinquent tax liens" (RPTL 1123 [1]). The power to foreclose has its advantages. A county, for example, may "take title to privately-held property for the [*3]nonpayment of property taxes even where the taxes owing represent only a small fraction of the value of the land," and may thereby "realize a substantial windfall" in a tax foreclosure proceeding (Matter of Foreclosure of Tax Liens, 165 AD3d 1112, 1122 [2d Dept 2018]; see RPTL 1100 et seq.). The statute thus incorporates a trade-off. The town lacks recourse against defaulters, but is guaranteed to recover its delinquent taxes from the county. The county accepts the deficiency, but may reap a windfall in collecting delinquent taxes.
The question here is whether the definition of "delinquent taxes" encompasses maintenance, repair, and demolition charges assessed by a town against real property (see Town Law §§ 64 [5-a]; 130 [16]). We agree with the majority that such charges are, strictly speaking, not taxes. Rather, they are more appropriately classified as " special assessment[s]' " (RPTL 102 [15]; see generally Lane v City of Mount Vernon, 38 NY2d 344, 347-348 [1976]), which are excluded from the strict definition of a "tax" (RPTL 102 [20]).
The RPTL, however, expressly contemplates that special assessments, under some circumstances, are to be treated as taxes for purposes of property tax collection. The term "delinquent tax," when used in article 11 of the RPTL, entitled "Procedures for Enforcement of Collection of Delinquent Taxes," includes an unpaid "special assessment or other charge imposed upon real property by or on behalf of a municipal corporation . . . relating to any parcel which is included in the return of unpaid delinquent taxes prepared pursuant to [RPTL 936]" (RPTL 1102 [2]). Moreover, special assessments may be used to finance public improvements (see Town Law § 231 et seq.) and, if the town is unable to collect such assessments, the tax roll listing the unpaid assessments is then transmitted to the county "and collection thereof shall be enforced in the manner provided by law for the collection of unpaid town taxes" (§ 243). Likewise, maintenance, repair, and demolition charges are to be "collected in the same manner and at the same time as other town charges" (§ 64 [5-a]). Indeed, counsel for the State Board of Equalization and Assessment, citing the same provisions, opined long ago that maintenance, repair, and demolition charges assessed by the town against real property are "in the same nature" as taxes, and thus they are guaranteed by the county pursuant to RPTL 936 (9 Op Counsel SBEA No. 55 [1990]). That has been the law in this State for decades.
If the rule proposed by the majority were to stand, towns would almost never be able to recoup their costs for maintaining, repairing, or demolishing blighted properties. Although the legislature has given towns the power to place a "lien and charge" on real property for the "total expense" of performing such necessary work (Town Law § 64 [5-a]; see § 130 [16] [g]), in practice, towns would lack the ability to enforce the liens or collect the charges from defaulting owners, forcing the towns to accept the deficiency. In our view, such a rule is not consistent with the statutory scheme, nor is it consistent with historical practices, nor is it good policy.
Entered: August 22, 2019
Mark W. Bennett
Clerk of the Court