# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 90
In the Matter of Town of
Irondequoit et al.,
   Appellants,
  v.
County of Monroe, et al.,
   Respondents.

Megan K Dorritie, for appellant Town of Irondequoit.
Kenneth W. Gordon, for appellant Town of Brighton.
Michele R. Crain, for respondents.
Association of Towns of the State of New York, amicus curiae.

DiFIORE, Chief Judge:

Under Real Property Tax Law (RPTL) 936, counties are required to guarantee and credit towns in connection with certain "unpaid delinquent taxes" assessed by the towns. After respondent Monroe County announced it would not credit unpaid property

- 1 -

maintenance and demolition charges, the Town of Irondequoit and the Town of Brighton initiated this litigation contending, among other things, that the determination was arbitrary, capricious, and contrary to law. Because the Appellate Division erred when it concluded the Towns were not entitled to relief, we modify the Appellate Division order, deny the County's motion to dismiss in part and grant the petition in accordance with this opinion.

In an effort to combat community blight, the Legislature authorized towns to enact local laws permitting them to direct real property owners to undertake property maintenance, including lawn care, and to repair or demolish unsafe buildings (*see* Town Law §§ 64 [5-a], 130[16]). If the property owners fail to timely perform the work, towns may complete the work or hire contractors to do so, assessing charges against the real property for the costs incurred. Town Law § 64 (5-a) specifically directs that "the expense so assessed shall constitute a lien and charge on the real property on which it is levied until paid or otherwise satisfied or discharged and *shall be collected in the same manner and at the same time as other town charges*" (*id.* [emphasis added]; *see generally* Town Law § 130 [16] [g] [permitting "the assessment of all costs and expense incurred . . . against the land on which said buildings or structures are located"]). These Town Law provisions are reinforced by Municipal Home Rule Law § 10, which authorizes local governments to enact local laws governing the levy, administration, and collection of local taxes and assessments, and the fixing, levying, collecting, and administering of charges and liens on property (*id*. §§ 10 [1] [ii] [a] [8], [9], [9-a]).

Based on this statutory authority, the Towns of Irondequoit and Brighton adopted

local town code provisions authorizing the imposition of property maintenance and demolition requirements on real property owners, providing for reimbursement of any maintenance and demolition costs incurred by the Towns "by assessment and levy upon" the real property to be "collected in the same manner and at the same time as other Town charges" (Irondequoit Town Code § 94-9; *see also id.* § 104-14; Brighton Town Code §§ 51-9, 129-14).  Until December 2016, these unpaid charges, along with other unpaid taxes, were routinely reported to Monroe County on a certified accounting pursuant to RPTL 936 and Monroe County Tax Act § 10.  For decades, Monroe County credited the amount of unpaid delinquent taxes, including maintenance and demolition charges, against the share of sales taxes the Towns would have otherwise owed to the County.  The result was that the County would ultimately bear the risk of loss for the unpaid charges, although the County—which has the sole power to foreclose on properties based on tax delinquency— might recoup the loss in a foreclosure sale.

This historical practice ended in December 2016 when the County issued a Tax Bill Charges Memorandum stating it would no longer guarantee what it characterized as "non-tax" charges, including the subject maintenance and demolition charges.  After an unsuccessful protest, which prompted an opinion letter in which the County asserted that it had no legal basis to guarantee "property specific demolition and clean-up charges," the Towns initiated this combined CPLR article 78 proceeding and declaratory judgment action seeking to annul the County's determination and requesting certain declaratory and injunctive relief.  Among other arguments, the Towns contended that the determination was arbitrary, capricious, and contrary to law because the charges amounted to unpaid

delinquent taxes that the County was required to guarantee and credit under RPTL 936. The County answered and moved to dismiss the petition, claiming that the charges were not subject to the guarantee because they did not fall within the definition of "tax" found in RPTL 102 (20), but were "special assessments" excluded from that definition.

Supreme Court denied the County's motion to dismiss and granted relief to the Towns, reasoning that these charges were unpaid taxes that the County was required to credit. The Appellate Division reversed, granted the motion to dismiss and dismissed the petition-complaint, with two Justices dissenting, in part.[1] After "assuming, arguendo" that the charges were "special assessments," the court concluded they were expressly excluded from the definition of "tax" in RPTL 102 (20) and, thus, were not subject to the section 936 guarantee and credit. The dissent would have granted relief to the Towns, concluding that, although the maintenance and demolition charges might "more appropriately [be] classified as 'special assessments,'" the RPTL "expressly contemplates that special assessments . . . are to be treated as taxes for purposes of property tax collection," referencing the definition of "delinquent tax'" in RPTL 1102 (2). The Towns appealed as of right based on the two-Justice dissent (CPLR 5601 [a]).

Resolution of this dispute turns on the proper interpretation of various provisions in the Real Property Tax Law, a byzantine statutory scheme governing the imposition and

---

[1] The dissent agreed with the decision to deny declaratory relief as unnecessary. To the extent that aspect of the decision is challenged here, "[i]t cannot be said that the Appellate Division abused its discretion in refusing to grant declaratory relief in this case" (*Greystone Mgt. Corp. v Conciliation & Appeals Bd. of the City of N. Y.*, 62 NY2d 763, 765 [1984]; *see* CPLR 3001).

collection of all types of assessments on real property.  In cases requiring the interpretation

of statutes, "the Court's primary consideration is to ascertain and give effect to the intention

of the Legislature" (*Matter of Mestecky v City of New York*, 30 NY3d 239, 243 [2017]

[internal quotations and citations omitted]).  "The plain text of a statute is the best indicator

of legislative intent and thus the proper starting place in discerning its meaning" (*Kosmider

v Whitney*, 34 NY3d 48, 55 [2019] [citation omitted]).  When the statutory provision to be

interpreted "is but one component in a larger statutory scheme, it must be analyzed in

context and in a manner that harmonizes the related provisions and renders them

compatible" (*Mestecky*, 30 NY3d at 243, quoting *Matter of M.B.,* 6 NY3d 437, 447 [2006]

[internal quotation marks omitted]; *see also Matter of DeVera v Elia*, 32 NY3d 423, 436

[2018]; *Matter of Lemma v Nassau County Police Officer Indem. Bd.*, 31 NY3d 523, 528

[2018]).

The starting point of our analysis is RPTL 936, which provides, in relevant part, that

after a town "collecting officer" delivers an accounting "of all taxes listed on the tax roll

which remain unpaid . . . . *[t]he county treasurer shall*, if satisfied that such account is

correct, *credit [the town] with the amount of such unpaid delinquent taxes*" (RPTL 936 [1]

[emphasis added]).[2]  To support its contention that the maintenance and demolition charges

---

[2] This scheme reflecting the County's obligation to credit towns with the difference between the tax levy and actual taxes collected is consistent with the Monroe County Tax Act.  Critically, Monroe County Code Chapter 673-1 § 10 provides in relevant part that each tax "collector shall . . . make and deliver to the county treasurer an account of unpaid taxes  . . . which he shall not have been able to collect . . . and upon the verification of the said account by the county treasurer [the collector] shall be credited by the county treasurer with the amount of such account."

are not eligible for County guarantee and credit under RPTL 936, the County relies on the definition of "tax" in the general definitions section at the beginning of the RPTL—section 102 (20). In that subsection, a "tax" is initially defined as "a charge imposed upon real property by or on behalf of a . . . town . . . for municipal or school district purposes" but the subsection further provides that, as used in RPTL articles 5, 9, 10 and 11, the term includes a "special ad valorem levy," but not "a special assessment." The County asserts that the maintenance and demolition charges do not meet this definition, falling outside the "unpaid delinquent taxes" that are subject to guarantee and credit, because they constitute special assessments. The Towns resist this characterization of the charges but assert, in any event, that for purposes of RPTL 936, the controlling definition appears in RPTL 1102 (2), which defines the phrase "delinquent tax." We agree with the Towns that the Legislature intended for these charges to be guaranteed and credited by the Counties under RPTL 936.

While the general definition of "tax" in RPTL 102 (20) may well apply to some provisions in RPTL article 9, section 102 begins with the caveat that the listed terms carry the designated meanings "[w]hen used in this chapter, *unless otherwise expressly stated or unless the context otherwise requires*" (RPTL 102 [emphasis added]). Here, the context— the presence of another pertinent statutory definition more specifically relevant to this aspect of the collection and enforcement scheme—leads us to conclude that the RPTL 102 (20) definition on which the County relies is not controlling.

Indeed, the terms "tax" and "taxes" are defined multiple times in the RPTL, sometimes in conflicting ways. Section 102 (20), cited by the County, itself provides that

the term "tax" includes special ad valorem levies for purposes of some articles but not others. Just below the definition of "tax," a "tax lien" is defined in RPTL 102 (21) to include not only "an unpaid tax [or] special ad valorem levy," but also a "*special assessment or other charge imposed upon real property* by or on behalf of a municipal corporation or special district which is an encumbrance on real property" (emphasis added). Within this complex statutory scheme, it is evident that the word "tax" has multiple possible meanings. Thus, despite the County's invitation to apply certain immutable common law or constitutional concepts to differentiate a "tax" from a "special ad valorem levy" or a "special assessment," such an approach is inappropriate here, where the Legislature has given different meanings to the same words and phrases depending on context. In this case, our task is confined to resolving the narrow statutory interpretation question of whether the Legislature intended these charges to be subject to the section 936 credit and guarantee. Thus, the question is not what constitutes a "tax" in the abstract, but rather whether these charges fit within the ambit of "unpaid delinquent taxes" as that term is used in section 936 of the RPTL.[3]

To answer that specific question, we look to RPTL 1102 (2), which falls within RPTL article 11—the article that sets forth "procedures for enforcement of collection of delinquent taxes." Under RPTL 1102 (2), the term "delinquent tax" includes "an unpaid

---

[3] For similar reasons, the County's reliance on *Lane v City of Mount Vernon* (38 NY2d 344 [1976]) is misplaced. *Lane* concluded that the disputed assessment was not a "tax levy" within the meaning of the New York State Constitution but rather an exercise of the City's police power. The question here is a matter of statutory interpretation, not constitutional analysis.

tax, special ad valorem levy, special assessment or other charge imposed upon real property by . . . a municipal corporation . . . , plus all applicable charges, relating to any parcel which is included in the return of unpaid delinquent taxes prepared pursuant to section [936] of this chapter." Given the express cross-reference in section 1102 to RPTL 936—the statute we are interpreting here—we are persuaded that this definition should inform our interpretation of the phrase "delinquent taxes" in RPTL 936, which encompasses these charges. Because this definition embraces not only taxes or special assessments, but also "other charge[s] imposed upon real property," it is unnecessary for us to characterize the unpaid maintenance and demolition charges as a "tax" or "a special assessment" or even an "other charge." In light of section 1102 (2), we reject the County's argument that the "unpaid delinquent taxes" subject to section 936 turn entirely on the RPTL 102 (20) definition of "tax."

Requiring that these charges be credited pursuant to section 936 accords with the overall structure for the enforcement of property tax liens, including the legislative grant of exclusive authority to counties in RPTL 1123 to commence in rem proceedings to foreclose on real property to "enforce the payment of *delinquent taxes or other lawful charges which have accumulated and become liens* against certain property" (RPTL 1123 [2][a] [emphasis added]), permitting counties—but not towns—to initiate proceedings to enforce the types of liens at issue here. Indeed, Town Law § 64 (5-a) directs that these charges "levied" on "real property" are to "be collected in the same manner and at the same time as other town charges" by virtue of the normal process of levying and collecting town property taxes, in which towns make the first attempt at collection and after which

enforcement shifts to the county (*see also* Town Law § 130 [16] [g] [directing "the assessment of all costs and expense incurred . . . against the land on which said (unsafe or collapsed) buildings or structures are located"]). It appears that the Legislature, recognizing that towns have little power to recoup their costs for unpaid real property tax liens, has shifted the risk of loss to counties, which are in the best position to recover the funds through in rem foreclosure proceedings. The same considerations apply to blighted properties, where the Legislature may have presumed that counties are in a better position to recover charges imposed on real property pursuant to the Town Law.[4] Thus, the County was required to credit the maintenance and demolition charges, and its determination to the contrary should have been annulled.

Accordingly, the order of the Appellate Division should be modified, without costs, by denying the motion to dismiss in part and granting the petition in accordance with this opinion and as so modified, affirmed.

Order modified, without costs, by denying the motion to dismiss in part and granting the petition in accordance with the opinion herein and, as so modified, affirmed. Opinion by Chief Judge DiFiore. Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.

Decided December 22, 2020

---

[4] This result is also consistent with the conclusions reached by the Attorney General and the State Board of Equalization and Assessment in comparable situations (*see* 2015 Ops Atty Gen No. 2015-3; 9 Ops Counsel SBEA No. 55 [1990]).