# SHEVLIN–CARPENTER COMPANY v. STATE OF MINNESOTA.

## ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 139.    Argued April 6, 1910.—Decided May 31, 1910.

Where the purpose of a state statute does not depend upon the inseparableness of its punishments the fact that a statute provides both double damages and fine and imprisonment does not necessarily prevent a construction that the provisions are independent.

There must be a first jeopardy before there can be a second and on the first the defense of second jeopardy cannot be raised in anticipation of deprivation of the constitutional immunity on a subsequent trial.

*Quære,* whether a state statute which inflicts two punishments in separate proceedings for the same act is unconstitutional under the Fourteenth Amendment.

The mere fact that a state police statute punishes an offense actually committed without regard to intent does not render the statute unconstitutional under the due process clause of the Fourteenth Amendment.

The Constitution declares the principle upon which the public welfare is to be promoted and opposing ones cannot be substituted. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 558.

A State does not offend the equality clause of the Fourteenth Amendment by taking as a basis of classification the ways by which a law may be defeated. *St. John* v. *New York*, 201 U. S. 633.

Innocence cannot be asserted as to an action which violates existing law, and ignorance of law will not excuse.

Courts cannot set aside legislation simply because it is harsh.

The statute of Minnesota punishing the cutting and removal of timber on state lands and imposing double or triple damages and fine and imprisonment for violation, whether the offense be wilful or not, is not unconstitutional under the due process clause of the Fourteenth Amendment either as putting one violating it in second jeopardy or because inflicting the penalties upon him regardless of his intent.

102 Minnesota, 470, affirmed.

THE facts, which involve the constitutionality of a statute of Minnesota regulating cutting timber on the public lands of the State and fixing penalties therefor, are stated in the opinion.

*Mr. Frank B. Kellogg,* with whom *Mr. N. H. Clapp, Mr. R. J. Powell* and *Mr. George W. Morgan* were on the brief, for plaintiff in error:

Section 7 of chap. 163 must be considered in its entirety, if any provision is unconstitutional, the whole falling. The legislature would not have passed the statute without the clause making a trespass a felony, or the clause allowing double damages in case of a casual or involuntary trespass.

Where an invalid provision in a statute was the inducement to the act, or where the provisions of the act are so

intimately connected with each other as to warrant the belief that the legislature intended them as a whole, then the whole statute must fall. *Pollock* v. *Farmers' L. & T. Co.,* 158 U. S. 601, 635; *Poindexter* v. *Greenhow,* 114 U. S. 270, 304; *Huber* v. *Martin,* 127 Wisconsin, 412; *Meyer* v. *Berlandi,* 39 Minnesota, 438; *Commonwealth* v. *Harra* (Mass.), 11 L. R. A., N. S., 799; *O. R. & N. Co.* v. *Smalley,* 23 Pac. Rep. 1008; *Texas & Pacific R. Co.* v. *Mahaffey,* 84 S. W. Rep. 646; Sutherland on Stat. Const., §§ 173–178. The Supreme Court of Minnesota treated the provisions of § 7 as inseparable, and considered the section as a whole, and this court is concluded by that construction of the statute. *Gatewood* v. *North Carolina,* 203 U. S. 531; *Armour Packing Co.* v. *Lacy,* 200 U. S. 226; *Smiley* v. *Kansas,* 196 U. S. 447.

In determining whether or not an action is civil or criminal in its nature the form of action is immaterial. The test is whether it is to punish a public offense or to redress a private injury. *United States* v. *McKee,* 4 Dill. 128; *S.C.,* Fed. Cas. No. 15, 688; *Coffey* v. *United States,* 116 U. S. 436; *Boyd* v. *United States,* 116 U. S. 616; *Wisconsin* v. *Pelican Insurance Co.,* 127 U. S. 265; *Huntington* v. *Attril,* 146 U. S. 657; *Lees* v. *United States,* 150 U. S. 476; *United States* v. *One Distillery,* 43 Fed. Rep. 846, 852; *United States* v. *Shapleigh,* 54 Fed. Rep. 126; *A., T. & S. F. Railway* v. *United States,* 172 Fed. Rep. 194.

The double damages imposed by § 7 upon the trespasser are a punishment for an alleged public offense, and the provision is penal in its nature. *Mo. Pac. Ry.* v. *Humes,* 115 U. S. 512; *Fay* v. *Parker,* 53 N. H. 342, and see *State* v. *Buckman,* 95 Minnesota, 272.

This is a penal action, and is unconstitutional as to plaintiffs in error because they are also subject to a punishment for the same acts under the provisions of the statute imposing a fine or imprisonment, thereby being subject to be put twice in jeopardy for the same offense.

The plaintiffs in error may properly raise this objection.

In the following cases the defendant had not yet been proceeded against criminally, yet the court refused to allow the imposition of punitive damages: *Fay* v. *Parker*, 53 N. H. 342, 390; *Austin* v. *Wilson*, 4 Cush. 273; *Taber* v. *Hutson*, 5 Indiana, 322, 325; *Koerner* v. *Oberly*, 56 Indiana, 284, 287; *Shafer* v. *Smith*, 63 Indiana, 226, 228.

A statute which places persons twice in jeopardy for the same offense does not satisfy the requirements of due process of law and further deprives them of a privilege and immunity guaranteed under the Federal Constitution. *Ex parte Lang*, 18 Wall. 163; *Ex parte Ulrich*, 42 Fed. Rep. 587; *Moore* v. *People*, 14 How. 13.

Although the denial by the States of several of the rights secured by the first ten amendments has been held not to be a denial of due process of law the question whether the placing of a person twice in jeopardy for the same offense is a deprivation of a privilege and immunity under the Constitution has never been decided. Plaintiff in error maintains that it is such a deprivation. See cases cited *supra*.

Where for the same offense a person is subject to two punishments which may be inflicted in different proceedings he is put twice in jeopardy, and it is immaterial that one of the proceedings is civil in form. *Coffey* v. *United States*, 116 U. S. 436; *United States* v. *McKee*, Fed. Cas. No. 15,688; *United States* v. *Gates*, Fed. Cas. No. 15,191; *United States* v. *One Distillery*, 43 Fed. Rep. 846; *United States* v. *Shapleigh*, 54 Fed. Rep. 133.

Both the provision of § 7 making the casual and involuntary trespasser liable to the State in double damages, and that declaring his act a felony, violate the provision of the Fourteenth Amendment that no person shall be deprived of liberty or property without due process of law.

The effect of the statute is to eliminate altogether the question of intent and this is a denial of due process of law. *Calder* v. *Bull*, 3 Dall. 386; *Coffey* v. *Harlan County*, 204 U. S. 659.

That there are implied limitations upon the power of the legislature growing out of the essential nature of our Government—which are now embraced in the provisions of the Fourteenth Amendment—is declared by many courts. See *Bardwell* v. *Collins*, 44 Minnesota, 97; *State* v. *Billings*, 55 Minnesota, 467; *State* v. *Foley*, 30 Minnesota, 350; *Minnesota Sugar Co.* v. *Iverson*, 91 Minnesota, 30; *Wilkinson* v. *Leland*, 2 Pet. 627; *Regent* v. *Williams*, 9 Gill. & J. 365; *Powers* v. *Bergen*, 6 N. Y. 358; *Goshen* v. *Stonington*, 4 Connecticut, 209; *Young* v. *McKensie*, 3 Kelly (Ga.), 31; *Ex parte Martin*, 13 Arkansas, 198; *Henry* v. *Railway Co.*, 10 Iowa, 540, 543.

These provisions cannot be justified nor saved from the operation of the Fourteenth Amendment as a proper exercise of the police power of the State.

The object of the statute was not a proper one for the exercise of the police power. *Mo. Pac. Ry. Co.* v. *Humes*, 115 U. S. 512; *Colon* v. *Lisk*, 153 N. Y. 188; *Minn. Ry. Co.* v. *Beckwith*, 129 U. S. 26; *Gulf, C. & S. F. Ry.* v. *Ellis*, 165 U. S. 150.

Assuming that the object of the statute was one which might properly be effectuated by an exercise of the police power, nevertheless this statute cannot be upheld as a reasonable or appropriate exercise of the power. *Mugler* v. *Kansas*, 123 U. S. 623, 669; *Welch* v. *Swazey*, 214 U. S. 91; *Denver & R. G. R. Co.* v. *Outcalt*, 31 Pac. Rep. 177; *Cottrel* v. *Un. Pac. Ry. Co.*, 21 Pac. Rep. 416.

*Mr. George T. Simpson*, Attorney-General of the State of Minnesota, with whom *Mr. Charles S. Jelley* and *Mr. Lyndon A. Smith* were on the brief, for defendant in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

This case involves the consideration of the validity under the Constitution of the United States of the imposition of double damages under an act of the State of Minnesota for a "casual and involuntary trespass," made by cutting or assisting to cut timber upon the lands of the State. The act is set out in the margin.[1]

The action was brought to recover the sum of $51,324.42 for timber cut by plaintiffs in error from certain lands of

---

[1] SEC. 7. If any person, firm or corporation, without a valid and existing permit therefor, cuts or employs, or induces any other person, firm or corporation to cut, or assist in cutting any timber of whatsoever description, on State lands, or removes or carries away, or employs, or induces, or assists any other person, firm or corporation to remove or carry away any such timber or other property, he shall be liable to the State in treble damages, if such trespass is adjudged to have been wilful; but double damages only in case the trespass is adjudged to have been casual and involuntary, and shall have no right whatsoever to any remuneration or allowance for labor or expenses incurred in removing such other property, cutting such timber, preparing the same for market, or transporting the same to or towards market.

Whoever cuts or removes, or employs or induces any other person, firm or corporation to cut or remove any timber or other property from State lands, contrary to the provisions of this act, or without conforming in each and every respect thereto, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding one thousand (1,000) dollars, or by imprisonment in the State prison not exceeding two (2) years, or by both, in case the trespass is adjudged to have been wilful.

Whenever any timber so cut is intermingled with any other timber, or whenever other property taken from State lands is intermingled with other property, the State may seize and sell the whole quantity so intermingled, pursuant to the provisions of section forty (40) of this act, and such other timber or property shall be presumed to have been also cut from State lands.

Provided the intermingling of timber above referred to shall only apply to cases having been adjudged as wilful trespass.

the State "without a valid and existing permit." The question in the case revolves around this permit and the extensions of it alleged by plaintiffs in error to have been given.

The findings of the court show the following facts: The State sold at public auction, in accordance with the statute, the timber on the lands to John F. Irwin, one of the plaintiffs in error, acting for himself and as agent of the Shevlin-Carpenter Company, and a permit was issued by the auditor and land commissioners of the State, which contained the following clause: "That no extension of time of this permit shall be granted except as provided in section 24, chapter 163, General Laws, 1895." The section provides that no permit shall be issued to cover more than two seasons, and no permit shall be extended except by unanimous consent of the board of timber commissioners, and under no circumstances shall an extension be granted for more than one year, and then only for good and sufficient reasons. Irwin gave bond as required by law. On the seventh of May, 1902, the permit was extended until the first of June, 1903. At the time the permit was extended the sum of $1,307, as required by law, was paid by plaintiffs in error into the treasury of the State, that sum being twenty-five per cent of the appraised value of the timber. In the winter of the years 1903–1904 plaintiffs in error, knowing that there had been one extension of the permit, and that that extension had expired, entered upon the land and cut and removed therefrom 2,444,020 feet of timber, which it was agreed was worth six dollars per thousand feet, board measure. After the timber was cut the surveyor general of the lumber district scaled and returned the amount of the same to the auditor of the State, which officer erroneously computed the amount due from plaintiffs in error at the contract price of stumpage value thereof, as if the permit were still in force, finding the same to be $18,574.39.

This amount was paid to the State and no part of it has been returned.

From these facts the court deduced the conclusion that the permit expired on the first of June, 1902, and that the extension thereof expired on the first of June, 1903, and that after the latter date it was of no effect and absolutely void, and was known to be so to plaintiffs in error when they cut the timber in controversy, and that their entry upon the lands was in violation of the law. They were adjudged wilful violators of the law and damages were assessed against them at treble the value of the timber, to wit, $43,992.36. The court, however, decided that a deduction should be made from that sum of $16,997, money paid by plaintiffs in error to the State after the permit had expired. There were other sums of money, with the disposition of which we are not concerned. Judgment was entered against plaintiffs in error for the sum of $26,995.17. The Supreme Court affirmed the conclusion of the trial court, that the permit had expired, and that the cutting and removing of the timber were illegal, but disagreed with that court as to the character of the trespass. The Supreme Court said: "The finding of the trial court that appellant was guilty of wilful trespass is not sustained by the evidence. On the contrary, the record conclusively shows that appellant had reasonable ground for believing authority had been granted and honestly acted on such belief." The court hence decided that the judgment should only have been for double, not treble, damages, saying, "being of opinion that in this action the State is limited to a recovery of double damages and the timber cut having been paid for, the judgment is necessarily to the value found." The case was remanded with directions to reduce the judgment to $14,664.12. In all other respects it was affirmed.

On the question of the validity of the law under the Fourteenth Amendment of the Constitution of the United

States the court said: "On a former appeal upon demurrer to the complaint, *State* v. *Shevlin-Carpenter Company*, 99 Minnesota, 158, the constitutional questions were raised, and it was there held that the act was constitutional, and that in case of trespass the State might recover either double the value of the property taken or treble the value, according to whether the facts constituted a casual or involuntary, or a wilful or unlawful trespass. We adhere to that decision, and for the reasons set forth in the opinion then filed."

This statement of the facts and the rulings of the courts of Minnesota exhibit the controversy, the State contending that the penalties of the statute are incurred by a casual or involuntary trespass; the plaintiffs in error insisting that to attach that consequence to acts done in good faith violates the due process clause of the Fourteenth Amendment of the Constitution of the United States.

Another contention is made by plaintiff in error. The statute makes one who cuts or removes timber contrary to the provisions of the act, or "without conforming in each and every respect thereto," guilty of a felony, and prescribes a fine or imprisonment, or both, in case the trespass is adjudged to have been wilful. To avail themselves of an objection to these provisions plaintiffs in error insist that they are not separable from the provision for double and treble damages and the statute becomes therefore unconstitutional, for under it the plaintiffs in error are subject to be put twice in jeopardy for the same offense.

The argument made to sustain the contention that the act must be considered single and that to treat its provisions as separable would destroy its integrity and defeat the purpose of the legislature, is somewhat elaborate. Its basic elements are that the statute is penal and its provisions for damages and for fine and imprisonment are punishments for the same act of wrongdoing, designed as

such and intended to be inseparable, and that the statute therefore subjects an offender to a double jeopardy. And this though the two punishments "may be inflicted in different proceedings," it being contended that "it is immaterial that one of the proceedings is civil in form." This being the consequence of the statute, it is insisted that it "does not satisfy the requirements of due process of law," and deprives plaintiffs in error "of a privilege and immunity guaranteed under the Federal Constitution."

The argument may be answered by denying its assumptions. The purpose of the act does not depend upon the inseparableness of its punishment. Its purpose, of course, was to protect the timber lands of the State, and some sanctions of the purpose there necessarily had to be. Double or treble damages and criminal punishment were selected, but they have no such dependence on each other, nor such relation to the purpose of the act as to demonstrate that both forms were necessary to it, or that one would not have been selected if the other could not have been. But, it is contended, this conclusion is not open to this court to make, for the "sufficient and compelling reason" that the Supreme Court of the State has decided to the contrary. To sustain this conclusion plaintiffs in error quote certain contentions of the Attorney-General of the State, made in the Supreme Court, and the reply of the court to the contentions. They do not support the conclusion deduced from them. It was urged by the Attorney-General that only wilful trespassers were subject to fine and imprisonment, but if such punishment could be held applicable to "casual and involuntary" trespassers, and the act be decided unconstitutional as to that class, nevertheless it could be adjudged constitutional as to wilful trespassers. The court replied that the provision for fines and imprisonment was applicable to both classes of trespassers. As to the punishments, the

court intimated that they were independent.  Replying
to the contention that to sustain this action would sub-
ject plaintiffs in error to the jeopardy of a second punish-
ment, the court·said that plaintiffs in error were "prob-
ably a little premature in raising the point."   And further
said, "it might come with some force if·presented in a
criminal prosecution after recovery in a civil action."   In
this we concur.   In other words, plaintiffs in error cannot
base a defense upon an anticipation of what may never
occur.   To permit this would discharge them from all
liability, for the defense, if good at all, would be good
against whatever action might be brought.   Necessarily
there must be a first jeopardy before there can be a second,
and only when a second is sought.is the constitutional
immunity from double punishment threatened to be taken
away.   An occasion for the defense of double jeopardy
may occur if the State of Minnesota should proceed crim-
inally against plaintiffs in error.   We do not mean to say,
however, that it·will be justified.   We do not mean to say
that the state law subjects an offender against is provi-
sions to a double jeopardy.   Nor do we mean to imply
that even if it have such effect the Fourteenth Amend-
ment of the Constitution of the United States may be
invoked against it.   Of that question we reserve.opinion.

The next contention of plaintiffs in error is that "both
the provisions of section 7 make a casual and involuntary
trespasser liable to the State in double damages, and that
declaring his act a felony violates the Fourteenth Amend-
ment," because those provisions "eliminate altogether.the
question of intent," and that the "elimination of intent
as an element of an offense is contrary to the requirements
of due process of law."   To·support the contention plain-
tiffs in error attack the power of a legislature to make an
innocent act a crime, and say that the "principle that
the legislature cannot, by its mere fiat, make an act other-
wise innocent a crime, and punishable as such, is one to

which this court will give effect, even though it be not expressly enunciated by the Constitution." The principle as thus expressed is very general, and takes no account of whether a law have prospective or retrospective operation. It would seem, therefore, to destroy the well-recognized distinction between *mala in se* and *mala prohibita.* The principle contended for is probably not intended to be taken so broadly, and its generality is further limited by concession that it may have exceptions "where so-called criminal negligence supplies a place of criminal intent, or where, in a few instances, the public welfare has made it necessary to declare a crime, irrespective of the actor's intent." A concession of exceptions would seem to destroy the principle. If the principle gets its life or its protection from the Fourteenth Amendment it cannot be destroyed by the legislature upon any conception of the public welfare. The Constitution declares the principle upon which the public welfare is to be promoted, and opposing ones cannot be substituted. *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 558.

It will be seen that the foundation of the arguments of plaintiffs in error is that their trespass was an innocent act. There is some ambiguity as to what is meant by "innocence." They quote Mr. Justice Chase in *Calder* v. *Bull*, 3 Dall. 386. It was there said that "a law that punished a citizen for an innocent action, or, in other words, for an act, which when done, was in violation of no existing law," could not "be considered a rightful exercise of legislative power." But it was said: "The legislature may enjoin, permit, forbid and punish; they may declare new crimes and establish rules of conduct for all its citizens in future cases." In other words, innocence cannot be asserted of an action which violates existing law, and ignorance of the law will not excuse. The law in controversy has no *ex post facto* element or effect in it. It was existing law when the trespass of plaintiffs in error

was committed, and a trespass is a legal wrong, not an innocent act. There is no element of deception or surprise in the law. When the permit was issued plaintiffs in error knew the limitations of it, and they took it at the risk and consequences of transgression. The State sought to guard against its wilful or accidental abuse. Permits had been abused and the lands of the State despoiled of their timber. The offenders were difficult to detect, or, if detected, the character of their acts, whether wilful, accidental or involuntary, equally difficult to establish, and the State, the Supreme Court said, had been "defrauded and robbed of large sums of money." Double and treble damages and a criminal prosecution were provided to meet the situation. It would be strange, indeed, if it were not within the competency of the legislature. To hold otherwise would take from the legislature the power to adjust legislation to evils as they arise and to the ways by which they may be effected. We held in *St. John* v. *New York,* 201 U. S. 633, that a State did not offend the equality clause of the Fourteenth Amendment by taking as a basis of classification the ways by which a law may be defeated. That case was applied in *District of Columbia* v. *Brooke,* 214 U. S. 138, to sustain a statute which provided a criminal proceeding against resident owners of property for neglecting to connect their property with sewers and civil proceedings against non-resident owners for a like neglect.

We do not understand the position of plaintiffs in error to be that a legislature may not prescribe a larger measure of damages than simple compensation, but that anything in excess of such compensation is punishment and cannot be constitutionally prescribed where there is no "conscious intent" to do wrong. And yet plaintiffs in error except from the principle "certain instances within the police power," overlooking that the principle, if it exist at all, must be universal. It is true that the police

power of a State is the least limitable of its powers, but even it may not transcend the prohibition of the Constitution of the United States. If, as contended, intent is an essential element of crime, or, more restrictively, if intent is essential to the legality of penalties, it must be so, no matter under what power of the State they are prescribed. Plaintiffs in error, while considering there may be exceptions to the principle contended for in the exercise of the police power, urge that the legislation in controversy is not of that character. The Supreme Court of the State, however, expressed a different view. It decided that the legislation was in effect an exercise of the police power, and cited a number of cases to sustain the proposition that public policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance. Those cases are set forth in the opinion of the court, and some of them reviewed.

We will not repeat them. It was recognized that such legislation may, in particular instances, be harsh, but we can only say again what we have so often said, that this court cannot set aside legislation because it is harsh.

We have considered only the basic principle of the contention of plaintiffs in error, and have not attempted to follow the details of their argument by which they support it, or the cases which they cite to illustrate it. The cases are subject to the exceptions we have given.

*Judgment affirmed.*

MR. JUSTICE HARLAN concurs in the result.