UNITED STATES, Appellee,

v.

Christopher M. TOLKACH Airman First Class, U. S. Air Force, Appellant.

No. 39296,
ACM S24826.

U. S. Court of Military Appeals.

Nov. 22, 1982.

For Appellant: *James E. Nancarrow,* Esq. (argued); *Colonel George R. Stevens* (on brief); Adam Greene, Esq., *Colonel Larry G. Stephens, Major Wade B. Morrison,* and *Major Robert G. Gibson, Jr.*

For Appellee: *Captain Richard O. Ely, II* (argued); *Colonel James P. Porter* and *Major Robert T. Mounts* (on brief); *Lieutenant Colonel Bruce R. Houston.*

## OPINION OF THE COURT

COOK, Judge:

Despite his pleas, the accused was convicted by special court-martial of violating a lawful general regulation and driving while intoxicated, in violation of Articles 92 and 111, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 911, respectively. The approved sentence consists of a bad-conduct discharge, confinement at hard labor for 3 months, forfeiture of $279.00 pay per month for 3 months, and reduction to airman basic. The United States Air Force Court of Military Review found "that the military judge erroneously curtailed the cross-examination of a government rebuttal witness on sentencing" and approved only so much of the sentence as provided for confinement at

hard labor for 3 months, forfeiture of $279.00 pay per month for 6 months, and reduction to airman. Unpublished opinion at 1, 2, dated April 19, 1980.

We granted accused's petition for review on the following issues:

I

WHETHER EIGHTH AIR FORCE REGULATION 55–3 WAS PROPERLY PUBLISHED AND DISSEMINATED AT K.I. SAWYER AFB, AS OF 19 JULY, 1979, SO AS TO BE A VALID AND ENFORCEABLE ORDER AT THE TIME OF APPELLANT'S ALLEGED OFFENSE.

II

WHETHER OR NOT THE PROSECUTION AND SUBSEQUENT CONVICTION OF THE APPELLANT FOR A VIOLATION OF EIGHTH AIR FORCE REGULATION 55–3, CONSTITUTES A DENIAL OF DUE PROCESS AS IS AFFORDED HIM THROUGH THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

Paragraph 171a, Manual for Courts-Martial, United States, 1969 (Revised edition), provides:

General orders or regulations are those orders or regulations generally applicable to an armed force which are *properly published* by the President or by the Secretary of Defense, of Transportation, or of a military department, and those orders or regulations generally applicable to the command of the officer issuing them throughout the command or a particular subdivision thereof which are issued by an officer having general court-martial jurisdiction, a general or flag officer in command, or a commander superior to one of these .... Article 92(1) contains no requirement that any kind of knowledge be either alleged or proved in a prosecution thereunder for violating or failing to obey a general order or regulation.

(Emphasis added.)

The regulation [1] in question was issued by the Commander, Eighth Air Force, a general officer exercising general court-martial authority over a major subcommand of the Air Force's Strategic Air Command (SAC). The regulation has general application to personnel throughout that command. Hence, Eighth Air Force Regulation 55–3 meets the Manual's definition of a general regulation set forth above. *See United States v. Tinker,* 10 U.S.C.M.A. 292, 27 C.M.R. 366 (1959); *United States v. Stone,* 9 U.S.C.M.A. 191, 25 C.M.R. 453 (1958). Under normal circumstances, such a regulation would be binding on the accused without proof of his knowledge of it. *United States v. Stone, supra; United States v. Arnovits,* 3 U.S.C.M.A. 538, 13 C.M.R. 94 (1953); para. 171a, *Manual, supra. See also United States v. Curtin,* 9 U.S.C.M.A. 427, 26 C.M.R. 207 (1958).

1. 8AF REGULATION 55–3, CONSUMPTION OF ALCOHOL BY ALERT FORCE AND FLYING PERSONNEL, May 18, 1979, provides:

1. This directive is punitive in nature. Violations are punishable under Article 92, Uniform Code of Military Justice.

2. Strategic Air Command air crew, missile crew, and maintenance personnel assigned or attached to Eighth Air Force units will *not* consume any alcoholic beverage, malt beverage, or beer, as defined in Air Force Regulation 215-1, Volume XVI, paragraph 1–1, while performing alert duties. This prohibition applies to personnel of the Air Force Reserve and Air National Guard who are serving on active duty or whose unit has been mobilized.

3. Alert force support personnel whose duties are performed in an Eighth Air Force Alert Facility or Alert Area will not consume any alcoholic beverage, or beer (as defined in paragraph 2) while on duty or during scheduled duty hours.

4. No member of the Air Force assigned or attached to any Eighth Air Force unit will act as a crew member of any military aircraft or perform missile crew alert duty at missile complexes within eight hours after the consumption of any alcoholic beverage, malt beverage, or beer (as defined in paragraph 2) or while under the influence of alcohol. This prohibition applies to personnel of the Air Force Reserve and Air National Guard who are serving on active duty or whose unit has been mobilized.

(Emphasis added.)

The accused concedes this but contends that the regulation was not "properly published" on his base and, hence, his knowledge of it should not be conclusively presumed. This contention requires a definition of "publish," a matter of first impression for this Court.

■■■ It is axiomatic that ignorance of the law will not excuse an act in violation thereof. 21 Am.Jur. *Criminal Law* § 142 (1981); *see Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); *Shevlin-Carpenter Co. v. Minnesota,* 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930 (1910). This principle applies whether the law is statutory "or a duly promulgated and published regulation." *United States v. International Minerals & Chemical Corp.,* 402 U.S. 558, 563, 91 S.Ct. 1697, 1700, 29 L.Ed.2d 178 (1971). The Federal Government provides a means of "publishing" regulations which, when complied with, constitutes notice to the public at large. Federal Register Act, 44 U.S.C. §§ 1501, 1507. However, this act covers regulations applicable to the general public and does not apply to service regulations which relate solely to internal military personnel practices and conduct. *Cafeteria and Restaurant Workers Union v.*

*McElroy,* 284 F.2d 173 (D.C.Cir.1960), *aff'd.* 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Thus, publication of Eighth Air Force Regulation 55–3 in the *Federal Register* is not a prerequisite to the presumption of knowledge. *United States v. Bryant,* 44 C.M.R. 573 (A.F.C.M.R.1971). But, some form of proper publication is necessary before such knowledge is presumed or there will be a violation of constitutional due process. *Lambert v. California, supra.*[2]

■ The verb "Publish" is defined by Black's *Law Dictionary* 1109 (5th ed. 1979) as:

> To make public; to circulate; to make known to people in general. To issue; to put into circulation. To utter, to present (*e.g.* a forged instrument) for payment. To declare or assert, directly or indirectly, by words or actions, that a forged instrument is genuine. An advising of the public or making known of something to the public for a purpose. [Citation omitted.]

What is troublesome in the context of this case is defining the precise time when the particular regulation is published. The potential time spectrum runs from the mo-

2. All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them and when that procedure is not unreasonable or arbitrary there are no constitutional limitations relieving them from conforming to it. *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925). This case dealt with state processes for condemnation of land for a road. In *United States v. Balint,* 258 U.S. 250, 252, 42 S.Ct. 301, 302, 66 L.Ed. 604 (1922), the Supreme Court stated:

> It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But that objection is considered and overruled in *Shevlin-Carpenter Co. v. Minnesota,* 218 U.S. 57, 69, 70 [30 S.Ct. 663, 666, 667, 54 L.Ed. 930], in which it was held that in the prohibition or punishment of particular acts, the State may in the maintenance of a public policy provide "that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance." Many instances of this are to be found in regulatory measures in the exercise of what is called the police power where the

emphasis of the statute is evidently upon achievement of some social betterment rather than the punishment of the crimes as in cases of *mala in se.*

However, in *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), a case dealing with an ordinance requiring persons convicted of a felony who remain in Los Angeles for more than five days to register with the Chief of Police, the Supreme Court, while recognizing that "ignorance of the law will not excuse," held:

> Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of situations where a penalty or forfeiture might be suffered for mere failure to act. . . . [T]he principle is equally appropriate where a person, wholly passive and unaware of any wrongdoing, is brought to the bar of justice for condemnation in a criminal case.

*Id.* at 228, 78 S.Ct. at 242. However, *see id.* at 230, 78 S.Ct. at 243 (Frankfurter, J., dissenting).

ment the regulation is signed by the issuing commander through the distribution process to subordinate commands, to particular installations and, further, through distribution to lesser commands at each installation, and finally ends with actual dissemination to the individual charged with its violation. Extending the time of publication too far defeats the concept of presumption of knowledge and converts it to actual knowledge; defining it at the inception of the process creates a due-process problem. Obviously, a commander cannot sign a regulation, put it in his desk drawer, and then expect his subordinates to be presumed to have knowledge of it. On the other hand, there must be a point where there has been sufficient publication to give rise to a presumption of knowledge.

In years past, when rapid, near-immediate, communication was impossible, the "publishing" of orders was somewhat simpler.

As to an order *published,*—the same, if announced in the manner usual at the post or station, as by being read at parade or other public occasion,[22] is ordinarily presumed to have become known to the accused and thus binding upon him. If he seek[s] to avoid the obligation on the ground that he was not notified of the order, the burden of proof will commonly be upon him to show that, by reason of authorized absence or other sufficient cause, he failed to be advised of such order before the expiration of the time within which it was required to be executed.

---

[22] Compare the old custom of publishing orders "by sound of drum and trumpet, that no man may pretend ignorance." Article 41 of Gustavus Adolphus; Do. 63 of James II.

Winthrop's *Military Law and Precedents* 575 (2d ed. 1920 reprint).

The Judge Advocate General of the United States Army opined:

2. No precise rule can be laid down as to *when* a military order, affecting the status, pay, rights, or duties of an officer, can be said to become operative as regards himself. A general principle, analogous to that of the law of *notice,* should ordinarily be applied to the cases, and the order be treated as not legally taking effect until the officer is personally officially notified of the same. In the absence of an actual personal delivery to or receipt by him of the order or an official copy, the fact of the promulgation of the same at his proper military station will in general be presumed to have given him official notice of its contents—a presumption, however, liable to be rebutted by proof that, without any fault or negligence of his own, knowledge of the same was never actually brought home to him, —as where, for example, he was at the time absent on leave, or ill at a distant hospital, or a prisoner in the hands of the enemy, and therefore was not notified in fact. [References omitted.]

The notice of the order, to affect the officer, should thus be a *personal* notice, actual or constructive, and it should be an *official* notice. Personal information of the same given to him by another officer or person not specifically authorized or required by his duty to communicate it, will not in general be legally sufficient; nor, on the other hand, will the mere official publication of the same at the headquarters of the Army, or of a department, without his being himself personally advised of the same, be sufficient to give effect to the order.

Where indeed the officer fails to receive personal official notice by reason of some fault or neglect of his own, as because of his having absented himself without authority from his station when the order arrived, or because, being on detached service, he has not duly advised the Adjutant General of his address as required by par. 468, Army Regulations, he will not be permitted to take advantage of his own wrong, and the promulgation of the order, upon its receipt, at his proper station or last reported station, will be held to operate as due and effectual, or *constructive,* notice. [References omitted.]

Winthrop, *A Digest of Opinions of the Judge Advocate General of the Army* 545 (1895).

The above-quoted material seems mainly directed to orders affecting a particular officer rather than the entirety of a command or service. However, like the earlier quotation from Winthrop's *Military Law and Precedents, supra,* it does provide for less than actual notice.

A noted treatise writer offered this:

It is a well-known principle that all persons are presumed to know the law of the State within which they live or in which they are temporarily domiciled; a similar rule prevails as to knowledge of the orders of a military commander which have been duly promulgated to his command. It may therefore be said that an order affecting a military person becomes operative as to such person when he has received military notice of its existence and contents; that is, if the order be general in character, it becomes operative when it has been formally promulgated to the command to which it pertains; if it be special or individual in its operation, it becomes effective when it has been served upon, or received, by such person through the usual military channels.

Davis, *A Treatise on the Military Laws of the United States* 382 (1913) (footnote omitted).

It would appear that the Army accepted the concept that a general order or regulation could become operative when it was "formally promulgated" to a command.

We are still left with the problem of defining the degree of "publication," "promulgation," or "military notice" of general regulations sufficient to give rise to the presumption of knowledge.[3]

The facts of the instant case are such as to add further perplexity to our consideration. Eighth Air Force Regulation 55–3 was dated May 18, 1979, and was assigned a "functional distribution" code (F). Functional distribution means that a statement listing intended users must accompany the proposed regulation. *See* para. 6–2*e,* Air Force Regulation (AFR) 5–1 (June 1, 1978); para. 12*b,* AFR 7–2 (Dec. 1, 1976). The assigned publication date is an estimate as to when the publication will be distributed and becomes the effective date unless otherwise specified. Para. 16–8*b,* AFR 5–1 (June 1, 1978).

■ Technical Sergeant Kari, Chief of the Publications Distribution Branch at K.I. Sawyer Air Force Base, testified that the base received Eighth Air Force Regulation 55–3 on June 8, 1979. His office distributed the regulation to the organizations on base through normal distribution channels. Ap-

---

**3.** In a concurring and dissenting opinion in *United States v. Curtin,* 9 U.S.C.M.A. 427, 26 C.M.R. 207 (1958), Judge Latimer acknowledged the difficulties in defining military notice of a lawful order of a commanding officer, stating:

There is nothing fundamentally wrong or unfair about requiring servicemen to acquaint themselves with the rules under which they must live in peace or survive in war. Many of the regulations governing their conduct, their assignments, and matters of official and personal interest are posted in a central place for the sole purpose of bringing them to their attention. They are so informed, and if they refuse or neglect to read that which is made readily accessible to them, they must suffer the consequences of their own neglect. The turnover of personnel is rapid, and the giving of personal orders to every individual is virtually impossible. Publication on bulletin boards is, therefore, a necessity which in turn forces the armed services to resort to the doctrine of constructive knowledge.

*Id.* at 435, 26 C.M.R. at 215.

In *United States v. Gladney,* 22 C.M.R. 360 (A.B.R.1956), it was held:

The constructive notice relied upon in numerous cases involving violations of standing orders or circulars is largely a legal fiction, designed to overcome the difficulty of establishing accused's knowledge thereof. Personnel are also responsible for taking reasonable action to familiarize themselves with posted regulations, orders and details. What is reasonable in this regard must depend upon the circumstances, including the status, length of service, and duties of the individual concerned.

*Id.* at 361–62. *See also United States v. Genesee,* 13 C.M.R. 871 (A.F.B.R.1953). These three cases deal with the concept of "constructive notice" as a substitute for actual notice of other than a general regulation. However, the concept of constructive notice as being notice imputed to a person not having actual notice is similar. *See Shauer v. Alterton,* 151 U.S. 607, 14 S.Ct. 442, 38 L.Ed. 286 (1894).

parently the distribution system malfunctioned as there was considerable testimony to the effect that the regulation was not received by various organizations on the base, including the accused's squadron. Somewhat surprisingly, the accused's commander testified that, prior to the accused's apprehension, he was unaware of any regulation which prohibited drinking while on alert duty, although there was a "policy" against it. He also testified that he had not briefed the accused, although he had put a commander's policy letter on the subject in the "crew information file" sometime earlier in the year.[4]

Thus, it would appear that while the regulation in question had been received on the base, actual distribution had occurred erratically, if at all. Further, it appears that the conduct prohibited had not been subject to *criminal* sanctions prior to that time. *See Lambert v. California, supra.*

Recognizing the difficulties in creating a rule of general application in a matter such as this, we conclude that "publication" in the sense of the Manual for Courts-Martial occurs when a general regulation is received by the official repository for such publications on a base, such as the master publications library.[5] Then it is available for reference by all base personnel. While it might be unreasonable to expect actual distribution to a particular unit on a base before "publication" could be said to have occurred, it seems likewise unreasonable to hold that mere receipt by the base publication distribution office is sufficient to effect presumptive notice for all members of a particular base.[6] We have searched the record and can find no indication that the base master publications library had received the regulation, and we conclude, therefore, that the regulation cannot be said to have been "properly published" on the base in the sense of paragraph 171a of the Manual, *supra.* Hence, violation of the regulation cannot constitute criminal conduct by the accused.

We do not believe that our selection of the base master publications library as the place where receipt of the regulation equates to "publication" places an undue burden on the military commander. There are other means of achieving immediate distribution and publication of those regulations requiring it. *See* paras. 5–2, 10–19c, AFR 5–1. However, if a commander chooses to entrust his regulation to normal distribution channels, he must accept the risk of incomplete notice to the persons affected by its provisions. If the regulation has such importance, its dissemination should not be handled through ordinary channels.

Therefore, we hold that Eighth Air Force Regulation 55–3 was not properly published at K.I. Sawyer Air Force Base and the accused may not be convicted of violating it. As our holding disposes of both issues granted, we need go no further here.

The decision of the United States Air Force Court of Military Review is reversed as to Charge I. The findings of guilty as to Charge I and the specification thereunder are set aside and that Charge is dismissed.

We would otherwise remand the case to the Court of Military Review for reassessment of the sentence. However, because the conviction of Charge II would authorize imposition of the maximum punishment

4. The same Eighth Air Force Commander had issued a letter to subordinate commanders on February 15, 1979, on the subject: "Drug Involvement of SAC Personnel." Therein he stated: "We must make it clear that the use of drugs or alcohol while on alert will eliminate completely the opportunity for an individual to remain on the crew force."

5. These are Air Force terms; we are sure other services have similar facilities.

6. The Air Force provides a "Publication Bulletin" every other week which is both an index to current regulations and forms and a list of all items in various stages of process. *See* para. 7, AFR 7–2 (December 1, 1976). The individual "customer account representative" uses the Publication Bulletin to stay current with existing regulations and to become aware of new regulations. There was evidence that the accused's squadron was not on the distribution list for 8th AFR 55–3.

which a special court-martial could adjudge (para. 127c, Manual, *supra,* Table of Maximum Punishments; Article 19, UCMJ, 10 U.S.C. § 819); and because of the lenient sentence imposed and the corrective action taken by the Court of Military Review in reducing the sentence, we hold there is no likelihood that a remand would result in further reduction in punishment. *United States v. Neverson,* 11 M.J. 153 (C.M.A. 1981). Accordingly, the remaining portions of the decision of the Court of Military Review are affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.