Vincent BRANCATO, Plaintiff,

v.

THE CITY OF NEW YORK; Michael R. Bloomberg, Mayor of the City of New York; the New York City Department of Health and Mental Hygiene; Thomas R. Friedan, Commissioner of the Department of Health and Mental Hygiene; the New York City Department of Finance; Martha Stark, Commissioner: of the Department of Finance; and William C. Thompson Jr. Comptroller of the City of New York, Defendants.

No. 02 CIV. 5990.

United States District Court, S.D. New York.

Feb. 5, 2003.

### DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff Vincent Brancato ("Brancato") brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 claiming violations of his rights under the due process clause of the Fourteenth Amendment of the United States Constitution. Brancato seeks declaratory relief, an order removing the lien placed by defendants against the property involved here, a judgment in an amount in excess of $25,000, and attorney's fees, costs and expenses. Defendants are the City of New York ("the City"); the City's Department of Health and Mental Hygiene ("DOH"); the City's Department of Finance ("DOF"); Michael R. Bloomberg, the Mayor of the City; Thomas R. Friedan, the Commissioner of DOH; Martha E. Stark, the Commissioner of DOF; and William C. Thompson, Jr., Comptroller of the City ("Comptroller") (collectively, "Defendants"). Defendants have moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim. For the reasons set forth below, the Court grants the motion in its entirety.

### I. BACKGROUND [1]

In mid-November 1999, Brancato received a notice of a violation of the City's health code on his property, a vacant lot of about 5000 square feet, located at 205 York Avenue, Staten Island, New York (the "Property")in the form of an order from the Commissioner of Health (the "Order"). (Declaration of Paul Brancato, dated October 21, 2002 ("Brancato Decl.") Exh. 1.) The Order instructed Brancato to remove all indicated violations, "and any similar violations that arise after the issuance of this order." (*Id.*) The Order clearly warned Brancato that unless the Property was adequately exterminated and cleaned, the DOH would clean and exterminate the premises "causing the nuisance conducive to feeding and habitation of rats." (*Id.*) Furthermore, the Order indicated that the City would bill Brancato for the cost of "abating the health nuisances" and "[i]f the bill is not paid promptly, the charges will become a priority lien against the premises..." *Id.* The Order also indicated in bold letters that "no further notices or warning prior to reinspection by the department of health" would be provided. In response to the Order, Brancato alleged that he cleaned the Property and informed DOH that he had done so, within about a week of receiving the Order.

In mid-May 2001, Brancato received correspondence from the DOF indicating that he was being charged for cleanup expenses for a health code violation on the Property (the "Charge"). The Charge amounted to $22,949.00 for abating the nuisance on the approximately 50 by 100 foot lot.

Upon receiving the Charge, Brancato inquired of the DOH into the basis for the Charge. DOH explained that the Charge was pursuant to the Order Brancato had received in 1999. Brancato was referred to the Comptroller, to whom he submitted a Notice of Claim. In response to this Notice of Claim, the Comptroller issued a settlement offer.

Brancato states two causes of action based on these facts. First, Brancato asserts that Defendants engaged in a "pat-

---

1. The factual summary that follows derives primarily from Brancato's Complaint ("Compl."), Brancato's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, dated October 21, 2002 ("Brancato Mem.") and Defendants' Memorandum of Law Submitted in Support of City Defendants' Motion to Dismiss the Complaint, dated September 18, 2002 ("Def.Mem."). Except where specifically referenced, no further citation to these sources will be made.

tern and practice" of violating his due process rights because DOH failed to give him sufficient notice of the alleged DOH violation and failed to provide him with adequate opportunity to be heard prior to the deprivation of his property. Furthermore, Brancato alleges that DOH's pattern and practice of referring complaints concerning property liens to the Comptroller's office unconstitutionally interferes with due process.

Second, Brancato states a claim for damages based on the City's negligently excessive cleanup charges, in that the City failed to mitigate damages by employing "more cost efficient and customary equipment and methods to conduct the alleged cleanup." (Compl. ¶ 69.) In his Memorandum in Opposition to Defendants' Motion to Dismiss, Brancato does not address this cause of action. In any event, the Court understands it to be an ordinary tort claim, before this Court pursuant to its pendent jurisdiction. Upon dismissal of Brancato's § 1983 claim, the Court declines to consider the state law cause of action. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### III. *DISCUSSION*

#### A. *STANDARD OF REVIEW*

Dismissal of a complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is proper only. where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). On a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded factual assertions in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Hishon,* 467 U.S. at 73, 104 S.Ct. 2229; *see also McGinty v.*

*State of New York,* 193 F.3d 64, 68 (2d Cir.1999).

#### B. *DUE PROCESS*

Brancato claims that the lien placed on the Property by the City after the Charge billed to him was not paid constituted a deprivation of property without due process in violation of the Constitution of the United States and 42 U.S.C. § 1983. Specifically, Brancato cites inadequacies in Defendants' stated policies and practices concerning notice and in the City's administrative hearing process.

To establish a violation of 42 U.S.C. § 1983, a plaintiff must prove that the conduct complained of was committed by a person or persons acting under color of state law and that the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution of the United States. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150–151, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). There is no doubt that the allegations set forth by Brancato satisfy the state action element of a § 1983 claim; all the Defendants clearly acted under color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993).

In further satisfaction of the prerequisites of § 1983 in this case, Brancato was deprived of a protected property interest within the meaning of the Fourteenth Amendment. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (for any procedural due process claim, the threshold issue is whether the plaintiff has a property or liberty interest protected by the Constitution). The Supreme Court has determined that "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process

protection." *Connecticut v. Doehr*, 501 U.S. 1, 12, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (citing *Peralta v. Heights Medical Ctr., Inc.*, 485 U.S. 80, 85, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988)).

If a protected interest is identified, a court must then consider whether the property was deprived by the government without due process of law: "The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." *Narumanchi v. Board of Trustees of the Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir.1988) (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Therefore, the question for this Court is whether Brancato was afforded constitutionally sufficient process before the lien was placed on the Property under the circumstances presented here.

The Supreme Court has clearly distinguished between a claim that an established state procedure does not afford procedural due process and a claim that a property right was lost because of a random and unauthorized act by a state actor. In the latter case, the existence of an adequate post-deprivation state remedy for the loss affords due process. *See Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Hudson v. Palmer*, 468 U.S. 517, 531–33, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

Because in this case Brancato does not allege that the process leading to the City's lien on his Property was random and unauthorized, but rather that the process and procedure itself violated his due process rights, the existence of a post-deprivation hearing pursuant to Article 78 to the New York Civil Practice Law and Rules ("CPLR") in New York State Supreme Court("Article 78 Proceeding"), is not sufficient, of itself, to satisfy due process.

At a minimum, the due process clause requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also Parratt*, 451 U.S. at 540, 101 S.Ct. 1908 (due process requires only that a hearing be held at a meaningful time and in a meaningful manner before a party is finally deprived of a property interest); *Wolff v. McDonnell*, 418 U.S. 539, 557–558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Mathews*, 424 U.S. at 333, 96 S.Ct. 893; *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914) (the fundamental requisite of due process of law is the opportunity to be heard). Furthermore, the right to be heard "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or consent." *Mullane*, 339 U.S. at 314, 70 S.Ct. 652. For notice to be sufficient, it must (i) be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," (ii) "convey the required information," (iii) "afford a reasonable time for those interested to make their appearance." *Id.*

Determining whether these conditions have been met must be determined on a case by case basis. "But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied." *Id.* at 314–315, 70 S.Ct. 652; *Doehr*, 501 U.S. at 9, 111 S.Ct. 2105 (" 'due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circum-

stances.'") (quoting *Mathews,* 424 U.S. at 334, 96 S.Ct. 893; *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands.")

Accordingly, resolution of the issue as to whether due process has been afforded requires analysis of the governmental and private interests that are affected. *See Mathews,* 424 U.S. at 334, 96 S.Ct. 893; *Arnett v. Kennedy,* 416 U.S. 134, 167–168, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1971); *Goldberg v. Kelly,* 397 U.S. 254, 263–266, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In *Mathews,* the Supreme Court outlined a threefold inquiry to determine what process is due when the government itself seeks to effect a deprivation: (i) "the private interest that will be affected by the official action", (ii) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards," and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 334–335, 96 S.Ct. 893.

Essentially, Brancato asserts that process was deficient here because Defendants failed to provide (i) adequate notice of the opportunity to be heard; (ii) an adequate hearing before his property interest was attached; and (iii) adequate post-deprivation remedies. The Court will address each of these alleged due process violations in turn.

■ It is undisputed that Brancato received the Order, which alerted him of the necessity to have the violation removed to avoid the prospect that the City, upon reinspection finding that the violation continued, would execute the cleanup itself. The Order was sent to Brancato at his home address. Brancato acknowledges having received the Order on November 16, 1999, which was dated November 12, 1999. In *Mullane,* cited by Brancato in support of the notice requirement he advocates, notice was given by publication. By contrast, notice in this case was sent by letter to Brancato. Since the notice was sent to the owner of the property on record, it was "reasonably certain" to inform those affected. *Mullane,* 339 U.S. at 319, 70 S.Ct. 652.

The indication on the Order that the property owner can contest the existence of the violation within three days of the Order, and the fact that the Order was sent by regular mail to Brancato, arriving four days from the date of the Order— which Brancato alleges is the regular practice of DOH in sending such notices— makes the Order inadequate notice for purposes of that limited ability to contest. However, the due process requirement for notice pertains only to a proceeding "which is to be accorded finality." *Id.* at 413, 70 S.Ct. 652. Here, the three-day period referred to is provided only to contest the existence of the violation. A deprivation of property is not threatened if the violation is not contested. No subsequent actions would be taken by the City as long as the violation is removed within five days of receipt of the Order. Rather, sufficient notice of the violation and the ability to address it is afforded, allowing the owner time to abate the nuisance and avoid any deprivation of his property.

Brancato was not deprived of any property based on the alleged inability to contest the violation because of the three-day window in the Order because he allegedly engaged in the cleanup. Brancato admits that in 1999 a violation existed and that he

did clean it up within the time allotted. Therefore, Brancato could not have contested the violation since he admits that it did exist. In other words, the lack of his ability to contest the Order within the three days allotted did not lead to the deprivation of property of which Brancato complains.

Furthermore, the three-day period to contest is just an immediate response time allotted; other process is afforded, for which this notice is sufficient, to contest the existence of a violation. In fact, an examination of Brancato's rights to contest the violation reveals that he had "three days after service or attempted service of such order..." to seek a stay of execution of any actions by the City to redress the alleged violation. New York City Admin. Code § 17–146. At the least, Brancato could have written a letter, or called the number provided, to contest the existence of the violation as soon as he received the Order and explained that it was received after the three days allotted. If the City then refused to hear his complaint, a different set of facts would be presented.

In this case, Brancato did not write a letter or call the City, and did not even look into the process available to him to contest the Order, because he does not dispute that a health code violation occurred on the Property in November 1999. Because the process concerning ability to contest the violation complained of was not even available to Brancato, as he had nothing to contest since he admits that a violation existed at that time on the Property, and because he was not actually injured by this alleged lack of process, Brancato does not have standing to challenge the process available. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 471–476, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (discussing constitutional underpinning for "actual injury" standing requirement); *Orozco v. Sobol,* 674 F.Supp. 125, 131 (S.D.N.Y.1987).

■ Next, Brancato argues that the Order was insufficient to alert him of the cleanup charges billed to him more than a year after he received the Order. Brancato alleges that when he first received the Order he did in fact remove the violation, but that, upon reinspection more than a year later, the City possibly found another violation of the health code. Without any further notice, the City proceeded to remove the violation, which led to the Charge being billed to Brancato for the later cleanup. The Charge became a lien when Brancato failed to pay it.

In other words, Brancato claims that the provision in the Order that a violator of the health code is ordered "to remove all such violations specifically cited herein, and any similar violations that arise after the issuance of this order" violates due process because it improperly exempts the City from having to issue a subsequent notice before a later violation is removed by the City and the property owner is billed for the cleanup. (Brancato Decl. Ex. 1.) Brancato argues that Defendants' failure to provide additional notice violates due process because "the unknowing landowner's window to marshal relevant evidence (the condition of the property prior to cleanup) passed without any indication to him that government action was being taken in 2001." (Brancato Mem. at 13.) Brancato alleges that since the cleanup was done in 2001 without any notice concerning this alleged subsequent violation, no opportunity for a pre-deprivation hearing was afforded, and therefore Defendants must demonstrate why such a pre-seizure remedy was not feasible. *See Fuentes v. Shevin,* 407 U.S. 67, 90–92, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

However, in the circumstances of this case, the original Order was sufficient notice of the violation in 1999 and of subsequent violations of a similar kind. The City's emergency nuisance abatement law, New York City Admin. Code §§ 17–142 et. seq., is constitutional. It is well recognized that when a local government, in the proper exercise of its delegated powers, summarily abates a public nuisance, it may compel the owner of the property involved to bear the cost of abatement. *See Lawton v. Steele,* 152 U.S. 133, 136, 14 S.Ct. 499, 38 L.Ed. 385 (1894) (the "police power" is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance.); *Lane v. City of Mt. Vernon,* 38 N.Y.2d 344, 379 N.Y.S.2d 798, 342 N.E.2d 571 (N.Y.1976) (the city is authorized and empowered to abate unsafe building conditions and public nuisances existing on private property and to charge the expense of such abatement as an assessment against the premises involved); *Matter of 300 West 154th St. Realty Co. v. Department of Bldgs. of City of N.Y.,* 26 N.Y.2d 538, 311 N.Y.S.2d 899, 260 N.E.2d 534 (N.Y.1970); *In the Matter of the Application of Barkin,* 189 Misc. 358, 71 N.Y.S.2d 267 (N.Y.Sup.Ct.1947).

No other conclusion is plausible or practical. A property owner in densely populated New York City can not be allowed to permit health code violations on his property, endangering public health through possible rodent infestation. The City, after affording a property owner notice and one opportunity to contest the existence of the violation or to remove it, must not be compelled to let a dangerous condition exist, standing by helplessly while the nuisance festers, while an owner sits on his hands, insists on receiving individual prior notice of each distinct violation upon rein-

spection, and considers his next course of action. The important state interest of public health trumps Brancato's right to separate notice and to a pre-deprivation hearing for each subsequent violation he commits. *See Kassel v. Consol. Freightways Corp. of Delaware,* 450 U.S. 662, 670, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981) ("regulations that touch upon [health and] safety . . . are those that the Court has been most reluctant to invalidate."); *Raymond Motor Transp. v. Rice,* 434 U.S. 429, 448–449, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978) (Blackmun, J., concurring) ("[I]f safety justifications are not illusory, the Court will not second-guess legislative judgment about their importance.")

*Doehr,* cited by Brancato in support of his claim, is distinguishable. There, the requirement of a pre-deprivation hearing was found in the context of prejudgment attachment of property by private parties. 501 U.S. at 18, 111 S.Ct. 2105. By contrast, here, it is the City that is placing a lien on the Property to secure payment of its Charge for curing a public health code violation. The circumstances here warrant more speedy action on the part of the City, even without an opportunity for Brancato, already previously put on notice, to be heard prior to its placing a lien on property that, upon an earlier inspection, had been found to contain a public nuisance. Simply put, the "exigent circumstance" required by *Doehr* in order for a pre-attachment hearing to be unnecessary to comply with due process is present here. *Id.* Similarly, as described in *Fuentes,* unlike a prejudgment replevin statute where only additional "time, effort and expense" is required for a pre-deprivation hearing to be implemented, this case does present the requisite "extraordinary circumstance" wherein the "unusual" burden on the City and on public health is so great as to lessen the need for repeated notice before

a nuisance is removed by the City. 407 U.S. at 90–92, 92 S.Ct. 1983.

Furthermore, the degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the adequacy of process afforded. *See Mathews,* 424 U.S. at 341, 96 S.Ct. 893. While the imposition of the lien on Brancato's property is sufficiently prejudicial to entitle Brancato to some procedural protections, the adverse effects that follow upon the filing of a lien "do not amount to a complete, physical, or permanent deprivation." *Doehr,* 501 U.S. at 11, 111 S.Ct. 2105; *Cobb v. Saturn Land Co. Inc.,* 966 F.2d 1334, 1337 (10th Cir.1992) ("in light of the heightened interest served and diminished burden imposed by the [contested scheme] . . . incomplete procedural protections afforded the affected property owner are nevertheless constitutionally adequate for the particular circumstances they address.") Therefore, as a remedy to a hazardous public health condition, the merely temporary property deprivation in the form of a lien, weighed against the potential risks that prolongation of the nuisance may entail, should be given appropriate weight in the Court's consideration of the extent of process due.

A finding otherwise, that a separate notice is required for each distinct health code violation observed on a party's property, and that the City must determine whether a violation is "new" or outstanding upon each inspection of property throughout the City, would create an impractical and costly burden on the City and pose an untenable danger to public health. In essence, such a procedure would enable a property owner, once before informed of a nuisance on his property, to permit health code violations to remain on that same property, engendering hazards to public health, for indefinite periods, until the City is able to inspect the lot again and issue another notice of a nuisance. At that point, upon the second notice, the property owner might or might not clean the lot, hoping that the City would take a long time to reinspect, thus starting the notice requirement again. Thereafter, until the next inspection by the City, the property owner could allow debris, waste, and rodent infestation to accumulate. Such a burden on the City, and to the public, is not warranted where the alternative in the current scheme is charging the property owner for the necessary cleanup that should be undertaken on an ongoing basis by the property owner on his own, as a civic and legal duty, without the need for constant reminders.

Ultimately, the process afforded by the City is constitutional. Notice is provided upon the fist violation, and an opportunity to contest the existence of the violation does exist. Subsequently, a second form of notice is provided through the Charge. Thereafter, a property owner can seek recourse in an Article 78 Proceeding. The existence of a public nuisance is a grave enough concern that the state need not necessarily, in all instances, provide a predeprivation notice and hearing before abating the nuisance itself and assessing the costs against the property involved. *See Steele,* 152 U.S. at 136, 14 S.Ct. 499.

■  Lastly, Brancato alleges that Defendants' policy of referring *pro se* landowners to the Comptroller after the imposition of a lien amounts to interference with due process. It is undisputed that Brancato could have challenged the City's imposition of the $22,949 lien by timely commencing an Article 78 Proceeding within four months of receiving the City's May 2001 Charge, but that he did not pursue this remedy. The existence of an alternate means of resolving a dispute, namely by filing a Notice of Claim with the Comptroller, in which the Comptroller acts pursuant to the powers set forth in § 93(i) of the City Charter "to settle and adjust

claims in favor of or against the city...," does not vitiate the judicial remedy available to Brancato.[2] Therefore, adequate notice and an opportunity for a hearing were available to Brancato under New York City Admin. Code § 17–152 and CPLR Article 78.

The Court concludes that, in this case, based on the City's process and procedures for dealing with health code violations by property owners, both notice and a sufficient opportunity to be heard were properly provided to Brancato. Therefore, the City's existing procedures provide all the process that is constitutionally due before a lien can be attached to a property alleged to be a public nuisance in violation of the City's health code.

### III.  *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated January 31, 2003 is amended to incorporate the discussion set forth above; and it is further

**ORDERED** that Defendants' motion to dismiss the Complaint for failure to state a claim is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

---

**2.** Brancato's argument that the practice of administrators at the DOH to refer those who contest a lien to the Comptroller's office causes *pro se* landowners to lose the opportunity for an Article 78 Proceeding, because it takes more than the four-month statute of limitations for the Comptroller to respond, fails on two grounds. First, Brancato can not prove he was *pro se* because within the four-month period Paul Brancato, Esq., alerted the Comptroller's office that he represented Bran-

cato. (*See* Deborah Rand's Declaration in Further Support of Defendants' Motion to Dismiss, dated October 30, 2002, Ex. 1.) Second, a referral to the Comptroller is not so misleading as to affect any rights possessed by Brancato; ignorance of the law on the part of Brancato can not create a due process violation. *Cf. Shevlin–Carpenter Co. v. State of Minnesota,* 218 U.S. 57, 68, 30 S.Ct. 663, 54 L.Ed. 930 ("ignorance of the law will not excuse").